```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
In re: JEFFREY WINICK,
                              Chapter 7
                              Case No.:
                              20-11976(SHL)

                    Debtor.
------------------------------------------X
UNITED STATES OF AMERICA

                    Plaintiff,

         -against-

JEFFREY WINICK,

                    Defendant.
------------------------------------------X

                    DATE: September 29, 2022
                    TIME: 12:22 P.M.


         EXAMINATION BEFORE TRIAL of the
Third-Party Witness, DAVID BERLEY, taken by
the respective parties, held at the offices
of Cullen & Dykman, 44 Wall Street, before
Nicholas Buckley, a Notary Public of the
State of New York.
```

1                    DAVID BERLEY
2         A.    I don't remember.  I did
3    state -- you know, I'm not supposed to
4    volunteer much -- that he was a very good
5    friend, and it's at least a 20-year period.
6         Q.    Would you say you gave him
7    money more than five times, if you recall?
8         A.    I don't recall.
9         Q.    Do you recall whether he --
10   when you gave him money, it was always a
11   loan or was it sometimes a gift?
12        A.    It was never a gift.
13        Q.    Did he always pay you back?
14        A.    That I don't know offhand.
15        Q.    So it's possible sometimes he
16   didn't pay you back?
17        A.    No, I wouldn't say that either.
18   He signed a note.
19        Q.    Do you lend money to people
20   often or was this unique to Mr. Winick?
21        A.    I would say I help dear
22   friends, if I can afford it.
23        Q.    Has Mr. Winick ever asked you
24   for money?
25        A.    Evidently, if it's in his

```
 1                 DAVID BERLEY
 2   answer if I did or didn't.
 3        Q.    Is that a lot of money to give
 4   Mr. Winick or --
 5              MR. ROSEMAN:  Objection.
 6              "Lend" as opposed to "give."
 7        Q.    Do you ever lend Mr. Winick
 8   more than a million dollars?
 9        A.    I don't remember.  But if it
10   says it, I guess.
11        Q.    Do you remember what dates you
12   gave him the million dollars?  Would it be
13   on the --
14        A.    I don't know.
15        Q.    When you lent Mr. Winick a
16   million dollars, did you expect that he was
17   going to pay you back?
18        A.    Definitely.
19        Q.    Did you expect that you take
20   the interest in the condominium in payment
21   of the loan?
22        A.    I didn't even know that
23   existed, maybe, at the time.  I don't know
24   the dates.  I don't know that I knew it
25   existed at the time.
```

1                    DAVID BERLEY
2        Q.     Did you have any conversations
3    with Mr. Winick about wanting your money?
4        A.     I'm sure I did if it says -- if
5    I did this.
6        Q.     Separate from this document, do
7    you --
8        A.     I don't recall.
9        Q.     You don't recall.
10              Do you recall Mr. Winick ever
11   telling you that he wanted you to take the
12   interest in SDSDR?
13       A.     I don't recall.
14       Q.     Do you recall meeting with Mr.
15   Winick prior to his bankruptcy filing?
16       A.     I -- I saw a lot of Mr. Winick,
17   so it wouldn't surprise me if I had met
18   with him.
19              MR. ROSEMAN:  Can you give us a
20          date or approximate date.
21              He's already testified that
22          they do business and he was a broker
23          for his retail properties.
24              MS. SWEENY:  The date would be
25          July 2020.

1                   DAVID BERLEY
2        the same territory, I promise.
3        Q.    After you became a member of
4   SDSDR, did Mr. Winick continue to be
5   involved in the business of SDSDR or the
6   condominium?
7        A.    I think his only involvement
8   would be as a renting agent because he knew
9   the tenant.  That was just my question.
10  Certainly, I would vote for that if they
11  ever asked me.
12       Q.    Did you ever transfer any of
13  the number portion of the interest in SDSDR
14  to anyone else?
15       A.    If it would be, it would be a
16  trust for my kids.
17       Q.    So you do remember whether you
18  --
19       A.    No.  But I tell you -- I mean,
20  it's a matter of record, so.
21       Q.    So it would have been to your
22  kids, if you transferred --
23       A.    Yes.
24       Q.    -- your interest?
25             MS. SWEENY:  Okay.  That's all

```
 1                    DAVID BERLEY
 2   things.
 3        Q.    Did you have conversations with
 4   him about its potential future then?
 5        A.    Yeah.  But it was much
 6   different.  I felt that it would be there
 7   for a long time.  I didn't feel that about
 8   anything anymore.
 9        Q.    So you accepted based on the
10   fact that its future value would justify --
11        A.    I made one -- I made one deal
12   during the last couple of years.  150, at
13   least on retail on Lexington Avenue,
14   somewhere good.  You think it's for me?
15        Q.    Fair enough.
16              But what I'm asking is, did you
17   accept --
18        A.    I accepted an income for my
19   family for the future.
20        Q.    And you thought that it would
21   generate money in the future that would --
22        A.    Yeah.  The value's not there
23   today.
24        Q.    What I'm trying to get to is,
25   Jeff owed you $1.6 million and he ended up
```

1                     DAVID BERLEY
2     giving you his property instead of paying
3     cash; so I'm wondering why you thought it
4     was worth taking the property instead of
5     expending the cash or --
6          A.    Because, knowing Jeff,
7     (inaudible), and I felt that getting the
8     money -- the property is what was good for
9     me as anything else at the time.
10         Q.    It was the best you were going
11    to get?
12         A.    Possibly.
13         Q.    Okay.  I'd rather have the
14    cash.  Not because of Jeff, just because --
15              MR. WILAMOWSKY:   Because
16         cash --
17              THE WITNESS:  No taxes.  This
18         is my own money.
19         Q.    And you testified before that
20    you've never had your interest in SDSDR 111
21    LLC valued, right?
22         A.    That's right.
23         Q.    Do you recall whether it's
24    generated any profits for you since you
25    took it over?