**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

JEFFREY WINICK

                  Debtor.

UNITED STATES OF AMERICA,

                  Plaintiff,

    - against –

JEFFREY WINICK

                  Defendant.

Chapter 7
No. 20-11976 (PB)

Adv. Proc. No. 20-1138 (PB)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**THE UNITED STATES OF AMERICA'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND IN OPPOSITION TO**
**DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2728
Fax: (212) 637-2717
E-mail: zachary.bannon@usdoj.gov

ZACHARY BANNON
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    I.    Issues of Fact Prevent Entry of Judgment on Count I, Regarding the Transfer of Mr. Winick's Interest in SDSDR111 LLC........................................................................ 3

       A.   Factual Background on the SDSDR111 LLC Transaction ............................................... 3

       B.   "Badges of Fraud" Indicate that Mr. Winick Transferred His Interest in SDSDR111 LLC with Intent to Hinder, Delay, or Defraud the IRS ........................................................ 6

    II.   The Government Is Entitled to Summary Judgment on Count II of the Complaint, Alleging False Oaths in Mr. Winick's Bankruptcy Schedules.................................................. 10

       A.   Mr. Winick Was Reckless in Valuing His Watches and Business Interests for His Bankruptcy Schedules ...................................................................................... 11

       B.   Mr. Winick Attempted to Conceal His Valuable Assets................................................. 14

    III.  The Government Is Entitled to Summary Judgment on Count IV, Alleging Willful Tax Evasion ................................................................................................................ 17

       A.   Mr. Winick's Conduct Satisfied 11 U.S.C. § 523(a)(1)(C)............................................ 17

       B.   Mr. Winick Had the Mens Rea to Violate 11 U.S.C. § 523(a)(1)(C) ........................... 19

CONCLUSION...................................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*City of Arkansas City v. Anderson*,
   762 P.2d 183 (Kan. 1988) ................................................................... 18

*Diorio v. Kreisler-Borg Const. Co.*,
   407 F.2d 1330 (2d Cir. 1969) ............................................................ 2, 12

*Glowczensky v. Taser Int'l, Inc.*
   04 Civ. 4052, 2010 WL 1957289 (E.D.N.Y. May 13, 2010) ............... 16

*Hawkins v. Franchise Tax Bd. of California*,
   769 F.3d 662 (9th Cir. 2014) ........................................................... 20, 22

*Hochstein v. United States*,
   900 F.2d 543 (2d Cir. 1990) .............................................................. 20

*In re Aboraia*,
   No. 08-218, 2012 WL 385635 (Bankr. N.D. Ala. Feb. 6, 2012) .......... 13

*In re Cambridge Capital, LLC*,
   331 B.R. 47 (Bankr. E.D.N.Y. 2005) ................................................. 6, 8

*In re Carmel*,
   134 B.R. 890 (Bankr. N.D. Ill. 1991) ................................................. 21

*In re Dubrowsky*,
   244 B.R. 560 (E.D.N.Y. 2000) .......................................................... 13

*In re Epstein*,
   303 B.R. 280 (Bankr. E.D.N.Y. 2004) .............................................. 17

*In re Fegeley*,
   118 F.3d 979 (3d Cir. 1997) ............................................................. 20

*In re Franco*,
   No. 18-2019, 2021 WL 5830617 (Bankr. D. Conn. Dec. 8, 2021) ....... 13

*In re Fretz*,
   244 F.3d 1323 (11th Cir. 2001) ........................................................ 20

*In re Griffith*,
   206 F.3d 1389 (11th Cir. 2000) ........................................................ 18

*In re Hassan*,
   301 B.R. 614 (S.D. Fla. 2003) ................................................................ 19

*In re Jacobs*,
   490 F.3d 913 (11th Cir. 2007) ......................................................... 17, 18

*In re Kaiser*,
   722 F.2d 1574 (2d Cir. 1983) .............................................................. 6, 9

*In re Lynch*,
   299 B.R. 62 (Bankr. S.D.N.Y. 2003) ...................................................... 18

*In re Maletta*,
   159 B.R. 108 (Bankr. D. Conn. 1993) .................................................... 12

*In re Mitchell*,
   633 F.3d 1319 (11th Cir. 2011) ........................................................... 19

*In re Our Distribution Co.*,
   110 B.R. 658 (Bankr. S.D.N.Y. 1990) .................................................... 14

*In re Retz*,
   438 B.R. 237 (Bankr. D. Mont. 2007) .................................................... 10

*In re Ryals*,
   424 B.R. 539 (M.D. Fla. 2009) ............................................................. 19

*In re Sazesh*,
   No. 05-5591, 2007 WL 2698208 (Bankr. N.D. Cal. Sept. 10, 2007) ............... 12

*In re Shafer*,
   294 B.R. 126 (N.D. Cal. 2003) ............................................................... 9

*In re Smith*,
   351 B.R. 274 (Bankr. D. Conn. 2006) ...................................................... 3

*In re Sofer*,
   519 B.R. 28 (Bankr. E.D.N.Y. 2014) ...................................................... 10

*In re Tomberlin*,
   No. 17 Civ. 872, 2020 WL 717410 (N.D. Ala. Feb. 12, 2020) ........................ 7

*In re Toti*,
   24 F.3d 806 (6th Cir. 1994) ................................................................. 20

*In re Tudisco,*
    183 F.3d 133 (2d Cir. 1999) ......................................................................... 19, 20

*In re Xiang Yong Gao,*
    560 B.R. 50 (Bankr. E.D.N.Y. 2016) .................................................................. 9

*Jhagroo v. Brown,*
    No. 16 Civ. 3426 (LTS), 2020 WL 419450 (S.D.N.Y. Jan. 27, 2020) ................... 15

*Morimura, Arai & Co. v. Taback,*
    279 U.S. 24 (1929) ..................................................................................... 13, 14

*Morris Plan Indus. Bank v. Lassman,*
    116 F.2d 473 (2d Cir. 1940) ........................................................................... 13

*Ostashko v. Ostashko,*
    No. 00 Civ. 7162 (ARR), 2002 WL 32068357 (E.D.N.Y. Dec. 12, 2002) ................ 8

*Spy Optic, Inc. v. Alibab.com, Inc.,*
    163 F. Supp. 3d 755 (C.D. Cal. 2015) ............................................................... 12

*Suter v. Gen. Acc. Ins. Co. of Am.,*
    424 F. Supp. 2d 781 (D.N.J. 2006) ................................................................... 16

*United States v. Coney,*
    689 F.3d 365 (5th Cir. 2012) ........................................................................... 20

*United States v. Gorokhovsky,*
    575 F. Supp. 3d 1050 (E.D. Wis. 2021) ............................................................. 22

*United States v. Timon,*
    No. 20 Civ. 1101 (MAD), 2022 WL 17249463 (N.D.N.Y. Sept. 6, 2022) .............. 18

*Village of San Jose v. McWilliams,*
    284 F.3d 785 (7th Cir. 2002) ............................................................................. 6

**Statutes**

11 U.S.C. § 523 ....................................................................................... passim

11 U.S.C. § 727 ....................................................................................... passim

26 U.S.C. § 6321 ........................................................................................... 4

26 U.S.C. § 6323(a) ..................................................................................... 4, 5

26 U.S.C. § 6672 ......................................................................................... 20

**Rules**

Fed. R. Civ. P. 56(e) ................................................................................................ 16

**Other Authorities**

Hawkins *Creates a Circuit Split and Facilitates Abuse of the Bankruptcy System*,
  68 Rutgers U.L. Rev. 517 (2015) ............................................................................ 21

## PRELIMINARY STATEMENT

Plaintiff the United States of America, by its attorney Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this reply brief in further support of its motion partial summary judgment, Dkt. No. 30 ("Gov't Br."), and in opposition to defendant Jeffrey Winick's cross-motion for partial summary judgment, Dkt. No. 40 ("Winick Br."), in this adversary proceeding. As explained herein, Mr. Winick is not entitled to judgment on Counts I or II of the Government's adversary complaint, nor is there a triable issue of material fact on Counts II or IV.[1]

On Count I, Mr. Winick concedes two elements of the Government's 11 U.S.C. § 727(a)(2)(A) claim—that he transferred his interest in SDSDR111 LLC and that he did so within one year before filing for bankruptcy. *See* Winick Br. at 13. He further concedes that the IRS had a superior interest in the property that he transferred. *Id.* at 14 n.6. And so on summary judgment, Mr. Winick only challenges the Government's proof of his intent, averring that he "had no intention of defrauding anyone" when he transferred this business interest to his friend, David Berley. Dkt. No. 42 ("Winick Decl.") ¶ 19. But as explained below, the Government will prove at trial that the SDSDR111 LLC transaction included numerous "badges of fraud" that together will show Mr. Winick's fraudulent intent. The evaluation of these badges of fraud is not well suited for summary judgment, requiring denial of Mr. Winick's motion on Count I.

On Count II of the adversary complaint, which alleges that Mr. Winick made false oaths when valuing his watches and his interests in his businesses on his bankruptcy schedules, the opposition papers do not dispute the central premise of the Government's motion. Specifically, he concedes that he took few, if any, steps to estimate the value of his property, as he was required

---

[1] Unless noted otherwise, this brief employs the same defined terms as the Government's opening brief.

to do.  With respect to his business interests, Mr. Winick states that he "had no idea what their value was," *id.* ¶ 24, and does not identify *any* steps he took to estimate their value.  As for his watches, he listed his "best guess" on his bankruptcy schedule because he was purportedly advised "not to be too concerned with the value that [he] listed" since the Chapter 7 Trustee would figure it out for himself.  *Id.* ¶¶ 29, 32.  Again, Mr. Winick took no steps to accurately value this property.  As noted in the Government's opening papers, Mr. Winick's "'reckless indifference to the truth'" of the values of his property is "'the equivalent of fraud.'"  Gov't Br. at 21 (quoting *Diorio v. Kreisler-Borg Const. Co.*, 407 F.2d 1330, 1331 (2d Cir. 1969)).  Because the relevant facts are uncontested, the Government is entitled to summary judgment on Count II.

And on Count IV, which alleges willful tax evasion, Mr. Winick also concedes the central premise of the Government's motion.  He "do[es] not deny that [he] spent his income on expenses other than tax payments," and indeed explains that he did so "because [he] was successful and that was the lifestyle [his] family and [he] had become used to."  Winick Decl. ¶ 12.  And he admits that he gave away millions of dollars' worth of property to his family while he owed tax liabilities to the IRS in order "to make sure [his daughter] would be taken care of."  *Id.* ¶ 16.  Mr. Winick appears to believe that his behavior was appropriate because he intended to pay back his taxes later, at a more convenient time, though that he was ultimately prevented from doing so by his gambling, business failures, and, later, the pandemic.  *Id.* ¶¶ 6-8.  But tax liabilities are not an optional obligation to be paid when (or if) it is most convenient for the taxpayer.  Mr. Winick's failure to pay taxes while spending opulently and divesting assets between 2012 and 2016 entitles the Government to summary judgment on its willful evasion claim.

As outlined in greater detail below, the Court should deny in full Mr. Winick's cross-motion for partial summary judgment, grant judgment in favor of the Government on Counts II, III,[2] and IV of its adversary complaint, and set Count I for trial.

## ARGUMENT

I. **Issues of Fact Prevent Entry of Judgment on Count I, Regarding the Transfer of Mr. Winick's Interest in SDSDR111 LLC**

The Bankruptcy Code prohibits debtors from, "with intent to hinder, delay, or defraud a creditor," "transfer[ring] . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2). To prove that Mr. Winick violated this provision, the Government need only show by a preponderance of the evidence that he: (1) transferred property; (2) with the intent to hinder, delay, or defraud the Government; and (3) did so within one year prior to filing for bankruptcy. *See In re Smith*, 351 B.R. 274, 278 (Bankr. D. Conn. 2006). Mr. Winick concedes the first and third elements. Winick Br. at 13. Ample evidence supports the Government's case on the second, making it a triable issue. Mr. Winick's motion for summary judgment on this claim should thus be denied.

A. *Factual Background on the SDSDR111 LLC Transaction*[3]

From at least 2014 through July 2020, Mr. Winick held a 25% membership interest in SDSDR111 LLC, a limited-liability company that owned and operated a building located at 545 West 111th Street in Manhattan. Dkt. No. 43 ("Yan Decl.") ¶ 2, Ex. 1. When Mr. Winick's 2012 tax liability was assessed on November 18, 2013, Harrison Decl. ¶ 4, Ex. 2, a statutory lien in favor

_____

[2] Mr. Winick does not contest entry of summary judgment in the Government's favor on Count III of the complaint, which claims that Mr. Winick's tax liabilities for tax year 2019 are non-dischargeable. Winick Br. at 1 n.1.

[3] The Government did not move for summary judgment on Count I or discuss it in its opening brief. Accordingly, the relevant facts are included herein.

of the IRS attached to his interest in SDSDR111 LLC, pursuant to 26 U.S.C. § 6321.  In May 2014, the IRS perfected its lien on Mr. Winick's business interest by recording it with the New York County Register, per IRS protocol.  *See* Bannon Decl. ¶ 41, Ex. 39; Internal Revenue Manual (I.R.M.) 5.17.2.3.2(2); *see also* 26 U.S.C. § 6323(a) (noting that lien is valid against holder of a security interest after recordation).

At that time, the IRS informed Mr. Winick's representative that the lien had been filed. Harrison Decl. ¶ 5, Ex. 3 at USA03269.  Mr. Winick's tax transcripts also reflect that the IRS sent him a Notice of Federal Tax Lien ("NFTL") on May 15, 2014, Harrison Decl. ¶ 4, Ex. 2 at WINICK01702, as was IRS policy after recording an NFTL, *see* I.R.M. 5.12.7.11(1), 5.12.7.11.2(5).  Furthermore, by 2014, Mr. Winick was aware that unpaid tax liabilities gave rise to IRS liens—the IRS had informed him or his representatives of this several times in connection with his previous tax debts in the mid-2000s.  *See, e.g.*, Harrison Decl. ¶ 5, Ex. 3 at USA03078, 03182.  Despite all this, Mr. Winick now claims that he "did not know that the IRS had a lien" against him in 2015, when he transferred the property interest at issue.  Winick Decl. ¶ 20.

Mr. Winick took out a $500,000 loan from his friend, David Berley, in January 2015, months after receiving the IRS's notice of tax lien.  Bannon Decl. ¶ 40, Ex. 38 at 1; Winick Dep. 123:16-21.  Mr. Winick claims that the loan was to help him catch up on outstanding tax liabilities. Winick Dep. 125:15-22.  However, Mr. Winick did not pay any taxes to the IRS for several months before or after receiving the loan.  Harrison Decl. ¶ 4, Ex. 2 at USA01702 (reflecting loan payments in August 2014 and April 2015).  In the loan note, Mr. Winick purported to grant Mr. Berley a "first priority lien and continuing security interest in and to" his interest in SDSDR111 LLC.  Bannon Decl. ¶ 40, Ex. 38 at WINICK2392-93.  The terms of the loan called for interest

payments only, with a maturity date on which the loan balance would become due less than a year later. *Id.*

Over the next five years, Mr. Winick made no principal payments on this loan and, on occasion, missed interest payments. Winick Dep. 130:4-15; 139:12-14. Nevertheless, Mr. Berley continuously extended additional credit to Mr. Winick and extended the maturity date of the loan. Bannon Decl. ¶ 40, Ex. 38 at WINICK2401-28. By November 2019, Mr. Winick owed Mr. Berley $1,627,500 on the secured loan. *Id.* at WINICK2419. He also owed Mr. Berley $250,000 on an unsecured loan that he received in January 2018 with comparable interest-only terms. *Id.* at WINICK2362.

In January 2020, Mr. Winick, his company Winick Realty Group, and Mr. Berley executed an agreement whereby Mr. Winick's loans would be paid off directly from commissions Mr. Berley owed to Mr. Winick's company (the "letter of direction").[4] Bannon Decl. ¶ 39, Ex. 37. In February 2020, Mr. Winick stopped paying the IRS pursuant to his then-operative installment agreement, which was established in November 2018, and instead used his letter of direction with Mr. Berley to pay off the unsecured loan in full. Harrison Decl. ¶ 4, Ex. 2 at USA01704, 01705; Bannon Decl. ¶ 43, Ex. 41; Eisinger Dep. 64:19-24. He did not make any payments on the secured loan. Winick Dep. 139:12-14.

By July 2020, Mr. Winick was contemplating bankruptcy. Winick Dep. 136:19-22. Also in July 2020—after more than five years without paying anything toward the secured loan's principal—Mr. Berley asked Mr. Winick to hand over his interest in SDSDR111 LLC in satisfaction of the $1,627,500 loan. Yan Decl. ¶ 10, Ex. 9. Even though the business interest had

---

[4] In addition to being friends, Mr. Winick's and Mr. Berley's companies did business together. *See* Winick Dep. 123:16-21.

most recently been valued at $2.5 million, Mr. Winick agreed to transfer the full interest to Mr. Berley. Bannon Decl. ¶¶ 44-45, Exs. 42-43; Winick Dep. 140:25-141:6. He did not inform the IRS before doing so and filed for bankruptcy a month later. *See* Bankr. Dkt. No. 1, Petition (filed Aug. 27, 2020).

B. *"Badges of Fraud" Indicate that Mr. Winick Transferred His Interest in SDSDR111 LLC with Intent to Hinder, Delay, or Defraud the IRS*

The course of conduct described above easily establishes that Mr. Winick acted "with intent to hinder, delay, or defraud," 11 U.S.C. § 727(a)(2), the IRS when he transferred his interest in SDSDR111 LLC to David Berley. "Fraudulent intent is rarely susceptible to direct proof. Therefore, courts have developed 'badges of fraud' to establish the requisite actual intent to defraud." *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983) (citations omitted). These badges include: (1) whether a transaction was supported by adequate consideration; (2) whether the parties to the transaction had a close relationship; (3) the financial condition of the debtor both before and after the transaction in question; (4) the existence of a pattern or series of transactions occurring after an individual has incurred debt; and (5) the general chronology of the transactions under inquiry. *Id.* at 1582-83. Courts have held that fraud can be presumed if even one of these factors are present, *Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002), and disputed facts surrounding "badges of fraud" preclude summary judgment, *see, e.g.*, *In re Cambridge Capital, LLC*, 331 B.R. 47, 60-61 (Bankr. E.D.N.Y. 2005). Here, many "badges of fraud" support

the inference that Mr. Winick transferred his interest in SDSDR111 LLC with intent to delay, hinder,[5] or defraud the IRS.

**General Chronology.** The chronology of the SDSDR111 LLC transaction strongly supports an inference of intent to hinder, delay, or defraud. Mr. Winick pledged an interest in SDSDR111 LLC to Mr. Berley in January 2015, in exchange for a $500,000 loan to "help [him] catch up with [his] taxes."[6] Bannon Decl. ¶ 40, Ex. 38 at 1; Winick Dep. 125:20-22. At this time, the overwhelming evidence—including both written and oral notifications by the IRS, *see* Harrison Decl. ¶ 5, Ex. 3 at USA03269; Harrison Decl. ¶ 4, Ex. 2 at USA01702—shows that Mr. Winick knew this property was subject to an IRS lien before pledging his interest in it to Mr. Berley. Harrison Decl. ¶ 5, Ex. 3 at USA03269; Harrison Decl. ¶ 4, Ex. 2 at USA01702. He nonetheless purported to pledge his interest in SDSDR111 LLC as a "first priority lien." Bannon Decl. ¶ 40, Ex. 38 at WINICK2392-93.

Thereafter, for five years, Mr. Berley made no effort to enforce his rights against Mr. Winick, never receiving principal payments while continuously extending additional credit and extending the maturity date of the loan. Winick Dep. 130:4-15; 139:12-14; Bannon Decl. ¶ 40, Ex. 38. But when Mr. Winick was contemplating bankruptcy in July 2020, Mr. Berley suddenly

---

[5] Mr. Winick emphasizes that, even though he transferred his interest in SDSDR111 LLC to Mr. Berley, the IRS lien on that interest survived, and the IRS can seek to enforce it against Mr. Berley. Winick Br. at 14 n.5. This is a red herring. Section 727(a)(2) prohibits *transfers* made with intent to "delay" or "hinder" a creditor. 11 U.S.C. § 727(a)(2). Moving property from the bankruptcy estate to the hands of a private party clearly has the effect of delaying or hindering the IRS. *See, e.g.*, *In re Tomberlin*, No. 17 Civ. 872, 2020 WL 717410, at *3 (N.D. Ala. Feb. 12, 2020) ("Debtors have been said to act with an intent to hinder their creditors if they intend to impede or obstruct them, and to act with intent to delay if they intend to slow or postpone their creditors.").

[6] Mr. Winick's description of the purpose of this loan raises further suspicions, as he made no tax payments for four months after receiving this loan, in breach of the installment agreement he had in place at the time with the IRS. Harrison Decl. ¶ 4, Ex. 2 at USA01702.

exercised his right to seize Mr. Winick's interest in SDSDR111 LLC. Winick Dep. 136:19-22; Bannon Decl. ¶ 44, Ex. 42. Mr. Winick transferred the property to Mr. Berley without informing the IRS,[7] then immediately filed for bankruptcy. The history of this transaction—with all critical points occurring at important moments in the timeline of Mr. Winick's debts to the IRS—strongly support an inference of fraud. *See, e.g.*, *In re Cambridge Capital, LLC*, 331 B.R. at 61 (noting that the "timing of [a] transfer . . . with respect to [an individual's] knowledge of possible claims against him" supports a finding of fraudulent intent).

**Pattern of Transactions.** Both the long-term and short-term patterns of the transactions also support an inference of Mr. Winick's intent to delay, hinder, or defraud. Over the long term, Mr. Winick's transfer of his interest in SDSDR111 LLC was the last of a series of transactions he made to divest himself of assets after incurring substantial tax liabilities and before filing for bankruptcy. In prior years, he had divested himself of other business interests, cash, and jewelry. Gov't Br. at 10-11. A pattern of divestment supports an inference of fraudulent intent. *See, e.g.*, *Ostashko v. Ostashko*, No. 00 Civ. 7162 (ARR), 2002 WL 32068357, at *19 (E.D.N.Y. Dec. 12, 2002) (discussing pattern of divestment as the "[m]ost important[]" badge of fraud).

In the short term, Mr. Winick's 2020 transaction history with Mr. Berley is suggestive of fraudulent intent. Mr. Winick owed both secured and unsecured debts to Mr. Berley. In February 2020, Mr. Berley stopped paying the IRS under an installment plan and immediately put his income toward paying off his *unsecured* loan to Mr. Berley, of approximately $250,000. Harrison

---

[7] Mr. Winick emphasizes that the IRS never took steps to establish the superiority of its interest in SDSDR111 LLC to that of Mr. Berley. Winick Br. at 8. But again, Mr. Winick did not inform the IRS before transferring his property. The IRS was under no obligation to seek a declaratory judgment against Mr. Berley at an earlier date, particularly because the IRS was consistently impeded from taking collection activity against Mr. Winick by installment plans and offers-in-compromise. *See* Gov't Br. at 4-7.

Decl. ¶ 4, Ex. 2 at USA01705; Bannon Decl. ¶ 43, Ex. 41; Eisinger Dep. 64:19-24. Months later, in July 2020, Mr. Winick transferred his most valuable remaining property, his interest in SDSDR111 LLC, to Mr. Berley, again without having made any payments to the IRS since January 2020. Bannon Decl. ¶ 44, Ex. 42. He then immediately filed for bankruptcy. Although Mr. Winick is correct that "[p]reference of one creditor over another does not automatically establish the required intent," Winick Br. at 14 (internal quotation marks omitted), it is equally true that "withholding funds from one creditor to pay another[] does not absolve [a] debtor of the violation of § 727(a)(2)(A) that he has committed," *In re Shafer*, 294 B.R. 126, 132 (N.D. Cal. 2003).

**Financial Condition of Mr. Winick.** Mr. Winick's financial condition after the transfer of the SDSDR111 LLC interest also supports a finding of his intent to hinder, delay, or defraud. The value of the interest was at least sufficient to resolve Mr. Winick's $1,627,500 debt to Mr. Berley. Yan Decl. ¶ 10, Ex. 9. When Mr. Winick filed for bankruptcy a month later, he stated that had no remaining valuable assets, according to his own estimations. Petition, Schedules A/B/C. Under similar circumstances, courts have found a "badge of fraud" because a debtor "appear[ed] to have endeavored to render himself 'judgment proof' by divesting himself of any assets on which a judgment creditor could collect." *In re Xiang Yong Gao*, 560 B.R. 50, 64-65 (Bankr. E.D.N.Y. 2016).

**Relationship to Mr. Berley.** The counterparty to the SDSDR111 LLC transaction, Mr. Berley, is a longtime friend of Mr. Winick's. Winick Dep. 123:16-21. This, too, is a badge of fraud. *See In re Kaiser*, 722 F.2d at 1582.[8]

---

[8] Mr. Winick's description of the transaction as being "like any other arms' length transaction," Winick Br. at 15, is puzzling. Mr. Winick testified that the purpose of the loan was to help him pay his back taxes, which seems an unusual purpose for a commercial loan.

**Adequacy of Consideration.** Finally, ample evidence supports the conclusion that the SDSDR111 LLC transaction was not supported by adequate consideration. Mr. Winick owed Mr. Berley $1,627,500. Yan Decl. ¶ 10, Ex. 9. At the time of the transfer, Mr. Winick's interest in SDSDR111 LLC had most recently been valued at $2.5 million, almost twice as much as the outstanding loan balance. Bannon Decl. ¶ 45, Ex. 43; Winick Dep. 140:25-141:6. Although Mr. Winick has pointed to contrary evidence, *see* Winick Br. at 15, at best, this at most creates a factual dispute as to whether Mr. Winick received adequate consideration for transferring his interest in SDSDR111 LLC to Mr. Berley. Transferring property for less than fair market value supports an inference of fraud. *See, e.g.*, *In re Retz*, 438 B.R. 237, 308 (Bankr. D. Mont. 2007) (finding "badge of fraud" where property was sold for less than appraised value).

* * *

Mr. Winick concedes each element of the Government's 11 U.S.C. § 727(a)(2)(A) claim (Count I), apart from whether he had the relevant intent when he transferred his interest in SDSDR111 LLC to Mr. Berley. But the Government has offered proof of at least five "badges of fraud" suggesting that Mr. Winick transferred his business interest with the mental state required to violate 11 U.S.C. § 727(a)(2)(A). Because "[a] bankruptcy court has sufficient grounds to conclude that [a] debtor has acted with intent to hinder, delay, or defraud when multiple badges of fraud are present," *In re Sofer*, 519 B.R. 28, 38 (Bankr. E.D.N.Y. 2014), Mr. Winick's motion for summary judgment on Count I of the Government's complaint should be denied.

## II. The Government Is Entitled to Summary Judgment on Count II of the Complaint, Alleging False Oaths in Mr. Winick's Bankruptcy Schedules

Count II of the Government's adversary complaint alleges that Mr. Winick made false oaths in his bankruptcy schedules by listing the value of his business interests as "UNKNOWN" and the value of his Rolex watches as $5,000. Mr. Winick does not contest that the statements

regarding the value of his property were material and made under oath, Winick Br. at 17, but only whether they were false or made with fraudulent intent, *see id.* at 17-29.

As explained below, the Government is entitled to judgment on Count II because the undisputed facts show that Mr. Winick made no effort to correctly value his property, evincing a reckless indifference to the truth of the values he listed for his property on his bankruptcy schedules. But even if the Government could not establish Mr. Winick's reckless indifference at this juncture, Mr. Winick would not be entitled to summary judgment on this count based on his cross-motion because there would at least be a factual dispute about his state of mind.

A. *Mr. Winick Was Reckless in Valuing His Watches and Business Interests for His Bankruptcy Schedules*

Although Mr. Winick is a high-earning entrepreneur and avid watch collector, *see* Bannon Decl. ¶ 49, Ex. 47, he attempts in his opposition papers to cast himself as unable to do more than guess at the value of his property. For example, with respect to his business interests, Mr. Winick explains that he "put 'unknown' [for the value of those interests] because [he] had no idea what their value was." Winick Decl. ¶ 24. He does not describe any steps he took to better understand their value. And with respect to his watches, Mr. Winick avers that he valued his watches at $5,000 "as [his] best guess." *Id.* ¶ 29. Again, he does not list any steps he took to estimate their value with more precision than a guess.

Mr. Winick's lack of effort did not satisfy his obligations under the Bankruptcy Code. The U.S. Bankruptcy Court's instructions for individual filers explain that when the value of property listed on a schedule to a bankruptcy petition is "difficult to figure out," the debtor must "estimate the value and be prepared to explain how [he] determined it." U.S. Bankruptcy Court, *Instructions: Bankruptcy Forms for Individuals* (Dec. 2015). As the Second Circuit has long made clear: "Statements called for in the schedules, or made under oath in answer to questions propounded

during the bankrupt's examination or otherwise, must be regarded as serious business; reckless indifference to the truth . . . is the equivalent of fraud." *Diorio*, 407 F.2d at 1131. In other words, "[a] debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *In re Maletta*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993); *see also In re Sazesh*, No. 05-5591, 2007 WL 2698208, at *6 (Bankr. N.D. Cal. Sept. 10, 2007) ("Inclusion of the concept of reckless disregard for the truth as a means of proving the knowledge element discourages defendants from shunning the truth in an effort to preserve a defense based on lack of knowledge."). Here, Mr. Winick's efforts to value his business interests and watches was recklessly indifferent.

Starting with his watches, Mr. Winick has owned dozens of luxury watches and previously insured them at definite values (notably, each for more than Mr. Winick valued the two watches together in his schedules). Bannon Decl. ¶ 35, Ex. 33. And as anyone who was shopped for luxury goods as extensively as Mr. Winick has, *see* Gov't Br. at 8-9, would know, it is easy to get a sense of the value of a commercially available product by going to stores, talking to retailers, or performing simple internet searches. That was the case here; there are many online retailers that sell watches of the same make and model that Mr. Winick listed in his schedules. Bannon Decl. ¶¶ 50-51, Exs. 48-49.[9] But Mr. Winick did not refer to his insurance documents, or even perform cursory market research, before making a "best guess" as to the watches' value—a guess that was

---

[9] Mr. Winick argues that the Court should disregard valuations based on the internet searches attached to the Bannon Declaration. Winick Br. at 26-27. The Government does not offer these exhibits to prove the value of Mr. Winick's watches, but rather simply to highlight the ease with which Mr. Winick could have taken steps to value his property appropriately. *See Spy Optic, Inc. v. Alibab.com, Inc.*, 163 F. Supp. 3d 755, 762 (C.D. Cal. 2015) ("Courts may take judicial notice of the fact that an internet article is available to the public, but it may not take judicial notice of the truth of the matters asserted in the article."); *see also* Winick Br. at 27 (conceding that Mr. Winick "never thought to run Internet searches" to value his watches).

off by nearly factor of ten. This course of conduct was recklessly indifferent to the truth. *See Morris Plan Indus. Bank v. Lassman*, 116 F.2d 473,473 (2d Cir. 1940) ("If he is merely guessing at the right amount—which it is necessarily within his power to ascertain—his answer is untruthful unless he in some way conditions it."); *see also Morimura, Arai & Co. v. Taback*, 279 U.S. 24, 33 (1929) (noting that an individual acts "with reckless indifference to the actual facts" when they make a statement "without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct"); *In re Aboraia*, No. 08-218, 2012 WL 385635, at *17 (Bankr. N.D. Ala. Feb. 6, 2012) (same). Mr. Winick's reckless indifference toward the scheduled value of his watches should result in a denial of discharge pursuant to 11 U.S.C. § 727(a)(2)(A).[10]

Mr. Winick was also reckless in listing the values of his business interests in WRG and WTN on his bankruptcy schedules as unknown. While he claims to have had "no idea" what they were worth, Winick Decl. ¶ 24, he did not refer to two relatively recent prior corporate valuations

---

[10] Mr. Winick says he made no further effort to value his watches because he was "advised [by counsel] that [he] should not be too concerned with the value that [he] listed because regardless of what [he] put, the bankruptcy trustee would not accept that value and would obtain an independent appraisal." Winick Decl. ¶ 32. It is unclear what importance Mr. Winick ascribes to this point, as he has conceded that his misstatements were material. *See* Winick Br. at 17. In any event, a debtor "cannot choose which questions on the . . . bankruptcy schedules are relevant and need to be answered. It is the debtor's responsibility to answer all of the questions on the . . . bank[ruptcy] schedules honestly, accurately and fully." *In re Dubrowsky*, 244 B.R. 560, 577 (E.D.N.Y. 2000). Furthermore, "[a] debtor's 'reliance on counsel' is also not a valid defense to a denial of discharge based on a debtor's false oaths." *In re Franco*, No. 18-2019, 2021 WL 5830617, at *8 (Bankr. D. Conn. Dec. 8, 2021).

to inform his estimates, *see id.* ¶ 26; Bannon Decl. ¶¶ 46-47, Exs. 44-45.[11]  Nor did he ask his accountants to assist in arriving at an estimate.  Winick Dep. 119:3-11.  Again, by acting without "examining the available source of knowledge which lay at hand," *Morimura*, 279 U.S. at 33, Mr. Winick acted with reckless indifference.

Further, as discussed in the Government's opening brief, Mr. Winick's reckless indifference to the truth of the property valuations listed in his schedules should be considered collectively.  Gov't Br. at 24.  "[I]ndividually, any one answer may have been the result of an innocent mistake. However, the cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent."  *In re Our Distribution Co.*, 110 B.R. 658, 663 (Bankr. S.D.N.Y. 1990).  Because the undisputed evidence shows that Mr. Winick was recklessly indifferent to the truth of the valuation of his property in his bankruptcy schedules, the Government is entitled to summary judgment on Count II of its adversary complaint.

### B.  Mr. Winick Attempted to Conceal His Valuable Assets

Even if the Court concludes that the Government has not indisputably established Mr. Winick's reckless indifference, Mr. Winick would not be entitled to summary judgment on Count II of the adversary complaint because there is at least a triable issue on whether he deliberately concealed the value of his property.

First, Mr. Winick scheduled his watches at a value at many times below their market value even though he is a self-proclaimed Rolex collector who has publicly discussed the values of his

---

[11] Notably, these two valuations (and the subsequent valuation performed by James Feltman) each assigned comparable values to Mr. Winick's interests, around $4,000,000.  *See* Gov't Counter 56.1 Stat. ¶¶ 51, 53, 71.  Although Mr. Winick's interests ultimately sold for less, their sale price may have been affected by Mr. Winick's continuous insistence throughout the sale process that he would litigate the rights of non-insider purchasers to purchase his controlling business interests. *See, e.g.*, Bankr. Dkt. No. 74.

watches.  Bannon Decl. ¶ 49, Ex. 47.  Only five years before filing for bankruptcy, Mr. Winick owned twenty-two luxury watches, each of which was independently valued at over $5,000. Bannon Decl. ¶ 35, Ex. 33.  Mr. Winick now claims that he is "not an expert on watches or their values" and that his previous statements "were exaggerations that [he] probably made to make [him]self look good."  Winick Decl. ¶¶ 30-31.  But in the Second Circuit, "a self-serving affidavit" is insufficient even to *defeat* summary judgment "when it contradicts the party's own prior statements." *Jhagroo v. Brown*, No. 16 Civ. 3426 (LTS), 2020 WL 419450, at *5 (S.D.N.Y. Jan. 27, 2020).  Mr. Winick certainly cannot prevail on summary judgment by asking the Court to disregard his own prior statements.

Other facts suggesting that Mr. Winick intentionally concealed the value of his assets are also in dispute.  For example, although Mr. Winick claims not to be "an expert on valuing businesses or business interests," Winick Decl. ¶ 26, the Government's valuation expert, James Feltman, has opined that an individual with Mr. Winick's professional licensing and access to information could have reasonably estimated the value of his own business interests.  Feltman Decl. ¶¶ 4-5.  Mr. Feltman explained that commercial real estate brokers must pass licensing tests that require the ability to use basic valuation models to value real property; that similar valuation models can be used to value business interests; and that, as the principal of Winick Realty Group, Mr. Winick had access to the information needed to use such models to estimate the value of his interests.  Supplemental Declaration of Zachary Bannon dated May 18, 2023, ¶ 3, Ex. 1 ("Feltman Dep.") 159:20-167:14.  Although Mr. Winick disagrees, opinions about "business custom and

practice" within specific industries is a permissible area of expert testimony. *Suter v. Gen. Acc. Ins. Co. of Am.*, 424 F. Supp. 2d 781, 791 (D.N.J. 2006).[12]

Mr. Winick's separate argument that there is no evidence that his listed valuation for his watches was false because there is no "contemporaneous evidence . . . that [Mr. Winick's] watches were worth more than $5,000 at the time he completed his schedules" is also inaccurate and puzzling. Winick Br. at 23-24. This argument disregards the valuation the trustee conducted of his watches only a few months after he filed for bankruptcy. *See* Bankr. Dkt. No. 34-1. A factfinder could (and almost certainly would) conclude that watches that were worth $47,500 in early 2021 were worth more than $5,000 in late 2020.

\* \* \*

In short, Mr. Winick was at least deliberately indifferent to the truth of the values of his property when he filed his bankruptcy schedules, entitling the Government to summary judgment on Count II of its complaint. But even if a factual dispute prevented the Court from arriving at this conclusion at this juncture, there would at least be a triable issue on Mr. Winick's scienter precluding summary judgment for Mr. Winick, as there is plenty of evidence suggesting that he made intentional, false oaths in his schedules.

---

[12] Mr. Winick curiously criticizes Mr. Feltman's declaration as a "cut-and-paste job from his expert report," Winick Br. at 20, but this criticism is unfounded given the rule requiring that summary judgment motions must be supported by sworn testimony rather than unsworn expert reports, *see, e.g.*, *Glowczensky v. Taser Int'l, Inc.*, No. 04 Civ. 4052, 2010 WL 1957289, at *2 (E.D.N.Y. May 13, 2010) ("Courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used [on] a motion for summary judgment without additional affidavit support.").

### III. The Government Is Entitled to Summary Judgment on Count IV, Alleging Willful Tax Evasion

In his opposition, Mr. Winick does not call into question the Government's entitlement to summary judgment on its claim that he willfully evaded tax liabilities he incurred in 2012-2016. To the contrary, he largely corroborates that his behavior satisfied both the conduct and *mens rea* elements of an 11 U.S.C. § 523(a)(1)(C) claim.

#### A. Mr. Winick's Conduct Satisfied 11 U.S.C. § 523(a)(1)(C)

The Government's opening brief highlighted five categories of conduct Mr. Winick engaged in, each of which is independently sufficient to support non-dischargeability under 11 U.S.C. § 523(a)(1)(C): (1) his failure to pay quarterly estimated taxes; (2) his opulent spending; (3) his divestment of assets; (4) his use of company resources for personal reasons; and (5) his manipulation of IRS collection procedures. Mr. Winick's opposition does not cast doubt on any of these.

**Non-Payment of Estimated Taxes.** Mr. Winick does not contest that he knew he was required to pay quarterly estimated taxes but failed to do so in 2012-2016. *See* Dkt. No. 41 ("Winick Counter-56.1 Stat.") ¶¶ 8-9. Numerous cases have found that a taxpayer's "fail[ure] to pay estimated taxes" is "highly relevant to the conduct requirement" of 11 U.S.C. § 523(a)(1)(C). *In re Jacobs*, 490 F.3d 913, 926 (11th Cir. 2007); *see also In re Epstein*, 303 B.R. 280, 287 (Bankr. E.D.N.Y. 2004) (noting that non-payment of estimated taxes is "relevant evidence which a court should consider in the totality of conduct to determine whether [a] debtor willfully attempted to evade or defeat taxes" (quotation marks and alterations omitted)).

**Opulent Spending.** Mr. Winick concedes that, even after he owed millions to the IRS, he "spent a lot of money because [he] was successful and that was the lifestyle [his] family and [he] had become used to." Winick Decl. ¶ 12. He does not meaningfully contest any of the extravagant

spending the Government identified. Winick Counter-56.1 Stat. ¶¶ 25-46. "Courts have . . . considered lavish spending to be an attempt to evade or defeat taxes." *United States v. Timon*, No. 20 Civ. 1101 (MAD), 2022 WL 17249463, at *4 (N.D.N.Y. Sept. 6, 2022) (collecting cases). Furthermore, Mr. Winick made no "discernable effort at 'belt-tightening'" once he owed the IRS, either, further evincing his tax evasion. *In re Lynch*, 299 B.R. 62, 84 (Bankr. S.D.N.Y. 2003).

**Divestment of Assets.** Mr. Winick concedes that he gave property worth millions of dollars to his daughter after incurring substantial liabilities to the IRS. Winick Counter-56.1 Stat. ¶¶ 54, 56, 58. "[T]ransfers of property for little to no consideration" is "conduct covered by § 523(a)(1)(C)." *In re Griffith*, 206 F.3d 1389, 1396 (11th Cir. 2000) (collecting cases). Mr. Winick now claims that his transfers to his daughter were part of innocuous "estate planning," Winick Decl. ¶ 16, but that does not change "the obvious effect of the transfers," which was to "place[] the [property] beyond the reach of [his] personal creditors." *City of Arkansas City v. Anderson*, 762 P.2d 183, 191 (Kan. 1988). "An estate plan cannot be used to hinder, thwart, delay, or defraud creditors." *Id.*

**Use of Corporate Resources.** Mr. Winick does not contest that he used a luxury corporate vehicle leased for thousands of dollars per month for his personal use, or that employees of Winick Realty Group (most notably, Chief Operating Officer Louis Eisinger) assisted him with his personal business. Winick Counter-56.1 Stat. ¶¶ 60-61. As the Eleventh Circuit held in a case where a debtor's law firm "purchased numerous luxury vehicles that he and his wife used in part for personal purposes," "[c]haracterization of earnings as non-wage income, without paying quarterly estimated taxes, and use of business entities to pay personal expenses, constitute affirmative attempts to conceal assets under § 523(a)(1)(C)." *In re Jacobs*, 490 F.3d at 926.

**Obstruction of IRS Collection.**  Mr. Winick does not contest that he thrice defaulted on installment plans with the IRS, nor that he made a $430,000 offer-in-compromise when he owed the IRS millions of dollars.  Winick Counter-56.1 Stat. ¶¶ 12, 16, 18, 23.  As discussed in the Government's opening brief, these actions prevented the IRS from ramping up its collection activities against Mr. Winick.  Gov't Br. at 4.  Courts have held that a "failure to cooperate with the IRS" by "fail[ing] to stay on track and fully pay off . . . tax liabilities" after being "placed on a payment schedule" is evidence of conduct that violates 11 U.S.C. § 523(a)(1)(C).  *In re Hassan*, 301 B.R. 614, 622 (S.D. Fla. 2003).  So is the submission of patently insufficient offers-in-compromise.  *See In re Mitchell*, 633 F.3d 1319, 1324 (11th Cir. 2011) (finding willful evasion where debtor made insufficient offers in compromise, knowing that they would halt collection activity).

\* \* \*

Ultimately, "[t]here are myriad fact patterns in which courts have concluded that acts or omissions, coupled with the failure to pay taxes, satisfy the conduct requirement of § 523(a)(1)(C)."  *In re Ryals*, 424 B.R. 539, 544 (M.D. Fla. 2009).  Mr. Winick has admitted to facts sufficient to analogize his case to nearly all of them.

### B. Mr. Winick Had the Mens Rea to Violate 11 U.S.C. § 523(a)(1)(C)

Mr. Winick's course of dealing with the IRS also easily satisfies the "willfulness" element of 11 U.S.C. § 523(a)(1)(C), which requires the Government to prove that Mr. Winick's "conduct [was] undertaken voluntarily, consciously or knowingly, and intentionally."  *In re Tudisco*, 183 F.3d 133, 137 (2d Cir. 1999).  Mr. Winick argues that relevant test in the Second Circuit requires not only that "conduct be undertaken voluntarily, consciously or knowingly, and intentionally," per *Tudisco*, *id.*, but also that the debtor have a specific intent to evade taxes.  Winick Br. at 32-37.  This is not the law of the Second Circuit, and this Court should not adopt it.

While one court of appeals has adopted Mr. Winick's preferred test, *see Hawkins v. Franchise Tax Bd. of California*, 769 F.3d 662, 668 (9th Cir. 2014), every other circuit to consider the issue has concluded that a debtor satisfies 11 U.S.C. § 523(a)(1)(C)'s *mens rea* requirement when he knows he is required to pay taxes and has the financial ability to do so, but nonetheless does not. *See, e.g.*, *In re Fegeley*, 118 F.3d 979, 984 (3d Cir. 1997); *United States v. Coney*, 689 F.3d 365, 374 (5th Cir. 2012) ("[T]he debtor need not have made their attempt with the specific intent to defraud the IRS."); *In re Toti*, 24 F.3d 806, 809 (6th Cir. 1994) ("He had the wherewithal to file his return and pay his taxes, but he did not fulfill his obligation. It is undisputed that he did so voluntarily, consciously, and intentionally."); *In re Fretz*, 244 F.3d 1323, 1330 (11th Cir. 2001) ("Fraudulent intent is not required").

Critically, the circuits following the majority rule use the same language of voluntariness, consciousness, and intentionality that the Second Circuit used in *Tudisco*, suggesting that the Second Circuit would follow this rule. *Compare Tudisco*, 183 F.3d at 138 ("The mens rea requirement of § 523(a)(1)(C) mandates that the debtor's conduct be undertaken "voluntarily, consciously or knowingly, and intentionally." (quotation marks omitted)), *with In re Toti*, 24 F.3d at 809 (finding liability where debtor "had the wherewithal to file his return and pay his taxes, but he did not fulfill his obligation . . . voluntarily, consciously, and intentionally."). This conclusion is also supported by the Second Circuit's approach to "willfulness" requirements in analogous civil tax provisions. *See, e.g.*, *Hochstein v. United States*, 900 F.2d 543, 548 (2d Cir. 1990) ("A person willfully fails to pay withholding taxes within the meaning of [26 U.S.C. §] 6672 when he pays other creditors with knowledge that withholding taxes are due. The individual's bad purpose or evil motive in failing to collect and pay the taxes properly play no part in the civil definition of willfulness." (citations and quotation marks omitted)). And the Ninth Circuit's approach has been

criticized, including by judges of that court, for giving wealthy taxpayers "an unfettered ability to dodge taxes with impunity." *Hawkins*, 769 F.3d at 670 (Rawlinson, J., dissenting); *see also* Matthew Williams, *Lavish Spending as Evidence of "Willful Tax Evasion": How the Ninth Circuit's Requirement of "Specific Intent" in* Hawkins *Creates a Circuit Split and Facilitates Abuse of the Bankruptcy System*, 68 Rutgers U.L. Rev. 517, 540-50 (2015). However, it is not necessary for this Court to resolve this dispute because there is sufficient evidence of Mr. Winick's scienter to satisfy either standard.

Following the majority rule, this case is exceedingly simple. Mr. Winick indisputably knew he had to pay his taxes, had the means to do so, but chose to avoid paying them in favor of buying luxury goods and making gratuitous transfers to friends and family. Gov't Br. at 3-4, 7-11. Mr. Winick's only, limited defense is that he had a moderate gambling disorder that rendered this category of his spending non-volitional. Weinstock Dep. 25:23-27:15. But his gambling disorder does not explain away his knowing and intentional *non-gambling* spending on luxury goods, high-end residences, and private school tuition—all while gifting millions of dollars to his daughter—while not paying his taxes. Gov't Br. at 7-11. In any event, courts have held that "as a matter of law, . . . [a] [d]ebtor's compulsive gambling disorder does not operate to prevent [a] [d]ebtor from forming the requisite fraudulent intent to evade payment of taxes." *In re Carmel*, 134 B.R. 890, 908 (Bankr. N.D. Ill. 1991).

But even if some gambling orders could be so severe as to negate the necessary scienter for violating § 523(a)(1)(C), Mr. Winick's was not. Mr. Winick's addiction expert testified that Mr. Winick was able to limit his gambling, for example by declining to take credit from casinos and setting limits on his spending so that he would not spend so much as to cut into other aspects of his lavish lifestyle. Weinstock Dep. 93:4-20; 105:20-106:6. According to his expert, Mr.

Winick simply learned that "being behind on back taxes [was] not punishing to him, so therefore he [didn't] need to take any action." *Id.* 95:16-96:18. Indeed, Mr. Winick essentially admits that he could control his gambling—attesting that he "did not feel like [he] needed to stop gambling or change [his] lifestyle to save money to pay taxes" because he could simply "fall[] behind on [his] taxes . . . then catch[] up when [he] made more money." Winick Decl. ¶ 7. These are not the words of an addict who lacks the volitional capacity to stop gambling.

As mentioned above, there would be similar result if this Court applied the Ninth Circuit's specific intent standard. The *Hawkins* case cited above recognized that a debtor's scienter is generally established indirectly, and that certain conduct "likely to be accompanied by an evasive motivation"—such transferring assets to family members—satisfies 11 U.S.C. § 523(a)(1)(C)'s *mens rea* element. *Hawkins*, 769 F.3d at 667-68. Mr. Winick did exactly that here. More generally, courts that require specific intent look to "badges of fraud" to determine intent. *See, e.g.*, *United States v. Gorokhovsky*, 575 F. Supp. 3d 1050, 1058 (E.D. Wis. 2021). These badges largely track those discussed above with respect to the conduct element, which Mr. Winick's conduct easily satisfies. *See id.* at 1061 (discussing "fail[ure] to make estimated tax payments" and "transfer[] [of] assets for no consideration" as "badges of fraud"). Mr. Winick's repeated statements that his spending and asset divestments were "never meant to prevent the IRS from collecting its debts," Winick Decl. ¶ 11; *see also id.* ¶¶ 6, 17, 19, 23, 28, thus do not create a triable issue of fact.

* * *

Because Mr. Winick knowingly frustrated the IRS's collection efforts in many ways after failing to pay his taxes in 2012-2016, the Court should grant summary judgment in the Government's favor on Count IV of its complaint.

**CONCLUSION**

For the reasons explained herein, the Court should grant summary judgment to the Government on Counts II, III, and IV of its complaint and should deny Mr. Winick's cross-motion for summary judgment on Counts I and II.

Dated: New York, New York
      May 18, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for the United States of America*

By:   */s/ Zachary Bannon*
      ZACHARY BANNON
      Assistant United States Attorney
      86 Chambers Street, 3rd Floor
      New York, New York 10007
      Telephone: (212) 637-2728
      E-mail: zachary.bannon@usdoj.gov