**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------x
In re:                                        :
                                              :            Chapter 7
        JEFFREY WINICK,                       :
                                              :            Case No. 20-11976 (PB)
                        Debtor.               :
----------------------------------------------------------x
UNITED STATES OF AMERICA,                     :
                                              :            Adv. Proc. No. 21-01138 (PB)
                        Plaintiff,            :
                                              :
        v.                                    :            AMENDED JOINT
                                              :            PRETRIAL ORDER
                                              :
JEFFREY WINICK,                               :
                                              :
                        Defendant.            :
----------------------------------------------------------x
```

The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions, and agreements are adopted as the Amended Pretrial Order herein.

## I.    NATURE OF THE CASE

In this adversary proceeding, plaintiff the United States of America ("Plaintiff") requests that the Court deny debtor and defendant Jeffrey Winick ("Defendant") a discharge of his debts in his Chapter 7 bankruptcy, or in the alternative, determine that his federal tax debts are not dischargeable.  Specifically, Plaintiff contends that: (1) Defendant is not entitled to a bankruptcy discharge because he violated 11 U.S.C. § 727(a)(2) by transferring his interests in a real estate entity, SDSDR111 LLC, to his friend and creditor David Berley with intent to hinder, delay, or defraud the Internal Revenue Service ("IRS"), to which the Defendant owes more than $8 million in tax liabilities; (2) Defendant is not entitled to a bankruptcy discharge because he violated 11 U.S.C. § 727(a)(4) by making a false oath or account by listing the value of his two Rolex watches as only $5,000 on Schedule A/B of his bankruptcy petition; and (3) Defendant's federal income tax liabilities for tax years 2012 through 2016 should be exempted from discharge because he violated 11 U.S.C. § 523(a)(1)(C) by attempting in any manner to evade or defeat those liabilities.

## II.   BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the Amended Standing Order of Reference dated January 31, 2012.  The case is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(I) and (J). The bankruptcy judge may enter a final order or judgment.

## III.    STIPULATED FACTS

The parties stipulate to the facts in attached **Exhibit 1**.

In addition, Plaintiff intends to request that the Court take judicial notice of the following fact:

> *During the relevant time period, an individual can perform internet searches for the model numbers of Defendant's watches—"18kt Yellow Gold Rolex Yacht-Master 2, 2017 Ref. #116688M" and "18kt/Stainless Steel Rolex Submariner 2009, Ref. # 116613"—and find numerous online retailers selling those products for specific prices.*

Defendant agrees that the Court can take judicial notice of the fact that an individual can *perform* internet searches for Defendant's watches in August 2020, when he scheduled his watches. However, Defendant does not agree that the Court can take judicial notice of the *results* of those searches absent reliable and admissible evidence from that timeframe.

## IV.    PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

### A.    Plaintiff's Contentions[1]

1.      Defendant violated 11 U.S.C. § 727(a)(2)(A) by transferring his interest in SDSDR111 LLC, a corporate entity owning a valuable interest in a commercial real estate lease, to his friend and creditor David Berley with the intent to hinder, delay, or defraud the IRS. Defendant is thus not entitled to a discharge in this bankruptcy.

2.      Defendant's intent to hinder, delay, or defraud the IRS is established by the presence of several "badges of fraud," *In re Kaiser*, 722 F.3d 1574, 1583 (2d Cir. 1983), including: (1) Defendant's knowledge of the IRS's superior lien on his interests; (2) Defendant's close personal friendship with Berley; (3) the higher value of the transferred interest compared to the debt to Berley it was used to satisfy; (4) Defendant's pattern of dissipation of assets; and (5) the pattern of loan transactions and payments between Berley and Defendant.

3.      Defendant violated 11 U.S.C. § 727(a)(4) by knowingly or recklessly falsely scheduling the value of his two Rolex watches together as $5,000 in Schedule A/B to his bankruptcy petition.

---

[1] Plaintiff refers the Court to its adversary complaint in this matter for a more complete description of its contentions set forth herein.

4.      Defendant's watches were in fact worth substantially more than $5,000.

5.      Defendant knew that his watches were worth well over $5,000 because of his history of collecting dozens of luxury watches, each of which were independently valued above $5,000.

6.      Alternatively, Defendant was reckless in scheduling the value of the watches as $5,000 because he did not conduct basic due diligence—such as conducting Internet searches or reviewing previous insurance policies—that would have revealed their much higher value and because, while preparing for bankruptcy, he interchangeably referred to the value of *one* and *two* Rolex watches as being $5,000.

7.      "There is no *de minimis* exception to the disclosure requirements under the Bankruptcy Code." *In re Evans*, 538 B.R. 268, 288 (W.D. Va. 2015). Thus, the relatively small dollar value at issue does not mitigate Defendant's misconduct in this regard.

8.      Further, Defendant's scheduling of his watches as worth only $5,000 was not *de minimis*, because the value recovered by the estate when it ultimately sold those watches represented a large share of the estate's total recovery.

9.      "A debtor's 'reliance on counsel' is also not a valid defense to a denial of discharge based on a debtor's false oaths." *In re Franco*, No. 18-2019, 2021 WL 5830617, at *8 (Bankr. D. Conn. Dec. 8, 2021). Defendant thus cannot rely on this defense to defeat this claim.

10.     Alternatively, Defendant cannot establish an advice of counsel defense because he did not fully inform his counsel about the value of his watches and because he did not follow his counsel's advice to use his "best estimate" of those watches' value.

11.     Defendant violated 11 U.S.C. § 523(a)(1)(C) by willfully attempting to evade or defeat his federal tax liabilities for tax years 2012 through 2016, and thus those liabilities cannot be discharged in bankruptcy.

12.     Defendant took numerous actions to evade or defeat the tax liabilities at issue, including: (1) failing to pay quarterly estimated taxes and using the funds he should have paid in estimated taxes for gambling; (2) making substantial discretionary purchases rather than paying his tax liabilities; (3) transferring significant assets to friends and family as gifts or for less than fair market value; (4) paying personal expenses and conducting personal business with corporate assets so as to avoid personally acquiring assets from which the IRS could collect through levies and otherwise; and (5) manipulating the IRS's collection procedures to avoid collection.

13.     Plaintiff's conduct was undertaken "voluntarily, consciously or knowingly, and intentionally," *In re Tudisco*, 183 F.3d 133, 137 (2d Cir. 1999) (internal quotation marks omitted), which satisfies 11 U.S.C. § 523(a)(1)(C)'s *mens rea* element.

14.     Alternatively, Defendant acted with specific intent to violate his duty to pay the tax liabilities at issue, as evidenced by the conduct set forth above and by his admission that he

knowingly fell behind on his taxes and intended to pay them back only after the time at which they were legally due.

15.  As a matter of law, Defendant's moderate gambling disorder does not negate his *mens rea* under 11 U.S.C. § 523(a)(1)(C).

16.  As a matter of fact, Defendant's moderate gambling disorder did not negate his *mens rea* under 11 U.S.C. § 523(a)(1)(C).

### B. Defendant's Contentions

1.  Defendant did not violate 11 U.S.C. § 727(a)(2)(A).  In particular, Defendant did not transfer his interests in SDSDR111 LLC with any intent to hinder, delay, or defraud any creditor.

2.  When he pledged his interests in SDSR111 LLC to David Berley in January 2015, Defendant lacked knowledge that the IRS had a prior lien on those interests.  While Plaintiff claims the IRS sent Defendant a notice of federal tax lien for the lien the IRS filed in 2014, Plaintiff has not produced a copy of that notice and Defendant does not recall ever receiving it and has no copy of it in his records.  Similarly, while Plaintiff claims Defendant's power of attorney was provided oral notice that the lien had been filed, Defendant has no recollection of ever being told this by his power of attorney.

3.  When he transferred his interests in SDSDR111 LLC to David Berley in July 2020, Defendant believed Berley had a senior lien on those interests and that to the extent there were any other liens on those interests, those liens were junior to Berley's lien, which was recently renewed in January 2020.

4.  Defendant did not violate 11 U.S.C. § 727(a)(2)(4).  In particular, Defendant did not make a false statement by scheduling the value of his two Rolex watches as $5,000, did not know that he was making a false statement, and did not have any fraudulent intent.

5.  As a matter of law, Plaintiff cannot prove Defendant made a false statement on his schedules by using evidence that post-dates the petition date.

6.  Defendant's scheduling the value of his Rolex watches as $5,000 was a result of ignorance or carelessness, which, as a matter of law, is insufficient to establish a violation of section 727(a)(4).  Defendant is not an expert on Rolex or other watches or their values.  All of the Rolexes he has ever obtained were through casino points from Defendant's gambling.  Defendant scheduled the value of his Rolexes as $5,000 because that was his best estimate.

7.  Defendant relied on advice of counsel when scheduling his watches, which advice was that Defendant did not have to obtain an appraisal, that he should provide his best guess as to their value, and that the Chapter 7 trustee would obtain his own appraisal regardless of the value that Defendant listed.

8.     As a matter of law, Defendant should not be denied a discharge under section 727(a)(2)(4) because how he scheduled his Rolex watches had no negative impact on the bankruptcy and resulted in no prejudice to any creditor given that the Chapter 7 trustee was able to liquidate those assets.

9.     Defendant did not violate 11 U.S.C. § 523(a)(1)(C).  In particular, Defendant did not engage in any conduct by which he attempted to evade or defeat his federal tax obligations, nor did he do so willfully.

10.     As a matter of law, in order to prove Defendant satisfies the mens rea requirement for willful tax evasion, Plaintiff must prove that Defendant acted with the specific intent to evade or defeat his federal tax obligations, which Plaintiff cannot prove.

11.     Debtor's largest post-tax expense was his gambling.  Had he not gambled, he would have been more than able to pay his tax liabilities.  Defendant's gambling, however, was not volitional due to his gambling disorder.

## V.     ISSUES TO BE TRIED

1.     Whether 11 U.S.C. § 727(a)(2)(A) precludes Defendant from obtaining a bankruptcy discharge.  Plaintiff claims Defendant violated the statute because he transferred his interest in a corporate entity, SDSDR111 LLC, to his friend and creditor David Berley with intent to hinder, delay, or defraud the IRS.  Proof of this claim requires Plaintiff to establish four elements: that "(1) the debtor transferred property; (2) said property belongs to the debtor; (3) the transfer occurred with actual intent to hinder, delay, or defraud; and (4) the transfer occurred within one year prior to filing for bankruptcy." *In re Kablaoui*, 196 B.R. 705, 708 (Bankr. S.D.N.Y. 1996).  Defendant concedes the first, second, and fourth elements.  Defendant contests the third element.

2.     Whether 11 U.S.C. § 727(a)(2)(4) precludes Defendant from obtaining a bankruptcy discharge.  Plaintiff claims Defendant violated the statute because he made a false oath or account on Schedule A/B of his bankruptcy petition by listing the total value of his two Rolex watches as $5,000.  Proof of this claim requires Plaintiff to establish five elements: that "(1) the debtor[] made a statement under oath; (2) the statement was false; (3) the debtor[] knew that the statement was false; (4) the debtor[] made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case." *In re Moreo*, 437 B.R. 40, 61 (Bankr. E.D.N.Y. 2010).  Defendant concedes the first and fifth elements.  Defendant contests the second, third, and fourth elements.  Defendant also has an advice of counsel affirmative defense.

3.     Whether 11 U.S.C. § 523(a)(1)(C) precludes Defendant from obtaining a discharge of his federal income tax liabilities for tax years 2012 through 2016.  Plaintiff claims Defendant violated the statute because he attempted to evade or defeat these tax liabilities.  Proof of this claim requires Plaintiff to establish "a conduct element (an attempt to evade or defeat taxes) and a *mens rea* requirement (willfulness)." *In re Tudisco*, 183 F.3d 133, 136 (2d Cir. 1999).  Defendant contests both elements.

## VI. PLAINTIFF'S EXHIBITS

In addition to the parties' joint exhibits, which are listed in attached **Exhibit 2**, Plaintiff's exhibits are listed in attached **Exhibit 3**.

## VII. DEFENDANT'S EXHIBITS

In addition to the parties' joint exhibits, which are listed in attached **Exhibit 2**, Defendant's exhibits are listed in attached **Exhibit 4**.

No exhibit not listed by Plaintiff or Defendant may be used at trial except (a) for impeachment or rebuttal, or (b) if good cause for its exclusion from the pretrial order is shown. Each side shall list all exhibits it intends to offer on its case in chief. The list shall include a description of each exhibit. All exhibits shall be pre-marked with each exhibit bearing a unique number or letter (numbers for Plaintiff and letters for Defendant), with the prefix PX for Plaintiff's exhibits and DX for Defendant's exhibits. In accordance with Judge Bentley's individual Chambers Rules, two indexed sets of exhibits shall be delivered to Chambers at least five days before the start of the trial, together with, if available, a flash drive containing PDF copies of all of the exhibits.

## VIII. STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

The parties stipulate to the authenticity and admissibility of the joint exhibits listed in attached **Exhibit 2**. Plaintiff's and Defendant's respective stipulations and objections to each other's exhibits are contained in attached **Exhibits 3** and **4**.

Any objections not set forth herein will be considered waived absent good cause shown.

## IX. PLAINTIFF'S WITNESS LIST

1.      John Harrison

2.      Jeffrey Winick

3.      Dr. Ilene Zwirn (expert witness)

4.      Louis Eisinger (by deposition)[2] – Tr. at 9:9-17, 11:25-12:6, 14:2-14; 15:18-16:5, 27:9-28:6 (objection: relevance), 30:8-13 (objection: relevance), 33:24-34:7, 48:20-22, 49:5-50:5, 50:15-51:2, 52:2-6, 53:4-54:8, 54:9-13 (objection: relevance), 55:24-56:5, 59:23-61:14, 63:20-

_____

[2] For each witness testifying by deposition designation, the parties will provide the Court with color-coded deposition transcripts, indicating: (1) unobjected-to testimony offered by Plaintiff (yellow); (2) objected-to testimony offered by Plaintiff (orange); (3) unobjected-to testimony offered by Defendant (blue); (4) objected-to testimony offered by Defendant (red); and (5) testimony offered by both parties (green).

64:24, 64:25-65:14, 66:8-67:23 (objection: relevance, cumulative), 72:12-19, 75:3-9, 78:7-25, 79:2-6.

5.      Danielle Winick Lapidus (by deposition) – Tr. at 12:12-16, 12:24-13:19, 14:6-13 (objection: relevance), 19:12-25, 21:22-22:18 (objection: relevance, unfair prejudice), 25:20-23 (objection: speculation), 29:21-30:24 (objection: speculation), 37:14-23, 38:17-22, 40:3-6 (objection: relevance), 40:18-41:3, 41:24-42:14, 48:5-49:9 (objection: speculation), 64:22-65:10, 66:5-23, 67:3-14, 72:6-8, 74:14-17, 75:3-19 (objection: speculation), 76:25-78:4, 81:8-21.

6.      David Berley (by deposition) – Tr. at 9:8-10, 54:17-24, 55:18-24, 59:25-60:16, 62:6-18 (objection: leading, speculation), 65:7-22 (objection: leading, foundation), 66:19-67:3, 67:8-68:4.

7.      Steven Wilamowsky (by deposition) – Tr. at 13:11-15:23 (objection: speculation), 15:24-16:4, 31:3-33:18, 35:21-36:15, 41:12-42:13, 42:24-43:2, 44:15-45:5, 46:7-17, 71:16-72:25, 73:2-74:2 (objection: speculation).

8.      Stanley Cheung (by deposition) – Tr. at 27:6-21, 30:10-21, 31:5-17.

9.      Jeffrey Winick (by deposition)[3] – Tr. at 15:17-25; 16:12-20; 19:12-18; 22:15-22; 24:16-25; 25:2-12; 32:25-33:22; 33:23-34:24; 35:17-24; 37:7-20; 39:6-13; 45:20-46:6; 48:8-21; 50:18-23 (objection: speculation); 51:11-52:9; 52:19-25; 54:9-14; 54:15-22 (objection: speculation); 59:2-20; 63:5-64:5; 64:16-65:22; 65:23-66:8; 66:20-67:10; 71:11-72:2; 72:8-12; 74:7-13; 77:2-10; 77:24-78:7; 81:18-82:24; 87:2-13; 93:10-12; 94:4-21; 95:2-96:23; 97:16-98:4; 100:12-22; 104:8-22; 108:23-109:18; 123:16-21; 124:17-125:10; 125:15-22; 132:14-134:8; 136:19-22; 140:20-141:6.

## X.      DEFENDANT'S WITNESS LIST

1.      Jeffrey Winick

2.      Dr. Jeremiah Weinstock, Ph.D. (expert witness)

3.      Louis Eisinger (by deposition) – Tr. at 13:7-21, 32:21-33:7, 33:24-35:13, 47:25-48:18, 50:10-14, 51:3-18, 55:24-56:5, 59:23-60:12, 61:19-23, 63:2-13, 64:15-24, 70:24-71:15, 72:12-73:3, 75:10-17, 79:22-80:8, 80:16-22, 81:8-82:4.

4.      Danielle Winick Lapidus (by deposition) – Tr. at 20:2-14, 21:11-15, 26:16-27:4, 30:25-31:13, 41:24-42:14, 56:19-57:20, 68:21-69:9, 72:6-74:17, 76:25-77:17, 78:5-15, 79:13-23, 79:24-80:12, 81:17-25, 82:19-84:4, 84:10-13.

---

[3] Defendant also counter-designates the following portions of this transcript (in pink) pursuant to Fed. R. Evid. 106: Tr. at 15:12-16, 16:7-11, 22:7-14, 35:9-16, 51:3-10, 52:11-18, 58:18-25, 86:13-25, 94:22-25, 103:24-104:7, 140:8-19.  Plaintiff does not object to these counter-designations.

5.      David Berley (by deposition) – Tr. at 9:11-17, 14:9-12, 20:12-25, 23:7-11, 40:15-25, 43:18-21, 45:22-46:13, 50:3-9, 54:2-16, 55:18-24, 60:17-61:3, 63:24-64:12, 66:19-67:3, 67:8-22.

6.      Stanley Cheung (by deposition) – Tr. at 27:22-28:14, 30:5-9, 30:22-31:4, 45:6-20 (objection to relevance), 49:4-19 (objection to relevance), 52:2-7, 53:13-17, 54:18-55:12 (objection to relevance), 72:17-73:4, 77:6-15, 82:12-15, 83:6-9 (objection to relevance), 83:15-20, 85:22-86:9.

7.      John Harrison (by deposition) – Tr. at 18:22-19:21, 59:18-60:2, 140:5-21, 141:8-142:15, 152:10-155:2, 156:22-157:6.

8.      Steven Wilamowsky (by deposition) – Tr. at 15:24-16:4, 17:19-19:4, 20:12-22:8, 22:10-13, 22:24-23:9, 23:10-24:6, 26:15-28:3, 28:17-29:12, 31:3-35:11, 36:16-37:20, 39:14-41:11, 42:14-45:5, 46:3-17, 47:12-21, 50:19-51:11, 57:16-58:23, 66:5-19, 72:7-25, 79:20-22, 80:11-18, 81:7-82:13.

The witnesses listed may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown. Each party shall list the witnesses it intends to call on its case in chief and, if a witness's testimony will be offered by deposition, shall designate by page and line numbers the portions of the deposition transcript it intends to offer. Counsel are expected in good faith to offer only those portions of deposition testimony that are necessary and shall refrain from designating the entireties of deposition transcripts and from designating cumulative or irrelevant matters. Each party shall set forth any objections it has to deposition testimony designated by the other and the basis therefor. Each party reserves the right to call as a live rebuttal witness any witness whose testimony has been offered by deposition, if such testimony is necessary to contest the testimony of a live witness that was not previously offered by sworn testimony earlier in this litigation.

## XI.      RELIEF SOUGHT

Plaintiff seeks a determination that Defendant is not entitled to a discharge of his debts in this bankruptcy, or, alternatively, that Defendant's federal tax liabilities for tax years 2012 through 2016 cannot be discharged in it.

Dated:  October 11, 2023

|  | |
|---|---|
| ARENTFOX SCHIFF LLP | DAMIAN WILLIAMS |
| *Attorney for Defendant* | United States Attorney |
|  | *Attorney for Plaintiff* |

By:    /s/ Jin Yan                              By:    /s/ Zachary Bannon

      Jin Yan                                Zachary Bannon

      1717 K Street NW                   Jean-David Barnea

      Washington, D.C. 20006        Assistant United States Attorneys

      Telephone: (202) 778-6442     86 Chambers Street, 3rd Floor

      Email: Jin.Yan@afslaw.com    New York, NY 10007

                                         Telephone: (212) 637-2728

                                       E-mail: Zachary.Bannon@usdoj.gov

Dated:  New York, New York
       October 13, 2023

                                 /s/ Philip Bentley
                               Honorable Philip Bentley
                               United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
In re:                                              :
                                                    :          Chapter 7
    JEFFREY WINICK,                            :
                                                    :          Case No. 20-11976 (PB)
              Debtor.        :
---------------------------------------------------------x
UNITED STATES OF AMERICA,                           :
                                                    :          Adv. Proc. No. 21-01138 (PB)
              Plaintiff,      :
                                                    :
    v.                                          :
                                                    :
JEFFREY WINICK,                                     :
                                                    :
              Defendant.      :
---------------------------------------------------------x

## SECOND AMENDED STIPULATED FACTS

Plaintiff the United States of America ("Plaintiff") and defendant Jeffrey Winick ("Debtor") stipulate to the following facts:

### Facts Relevant to Count I

1.     SDSDR111 LLC ("SDSR111") is a Delaware LLC formed for the purpose of owning and operating an interest in the condominium located at 545 West 111th Street in New York City.  DX 4 at WINICK 2104.

2.     The Internal Revenue Service ("IRS") filed a tax lien against Debtor with the New York County Register Office on May 19, 2014.  JX 2 at 6.

3.     The IRS never filed a tax lien against Debtor with the State of New York, Department of State.  *See* JX 2 at 6.

4.     Debtor executed a Secured Promissory Note dated January 29, 2015 in the principal amount of $500,000 in favor of David Berley ("Berley").  JX 6.

5.      On January 30, 2015, a UCC financing statement was filed with the State of New York, Department of State, for Debtor's interests in SDSDR111, with Berley listed as the secured party.  JX 12 at WINICK 2429-33.

6.      In August 2015, Debtor's power of attorney provided the IRS with a copy of the Secured Promissory Note reflecting Berley's $500,000 loan to Debtor.  PX 1 at USA 3290-91.

7.      In 2016, Berley loaned an additional $1 million to Debtor and the Secured Promissory Note was replaced with an Amended and Restated Secured Promissory Note.  JX 8.

8.      In March 2018, Debtor's power of attorney provided the IRS with additional documents relating to the Berley loan, including copies of the Amended and Restated Secured Promissory Note and Berley's 2015 UCC financing statement.  JX 25 at WINICK 1225-50; PX 1 at USA 3335-36.

9.      In November 2019, Debtor executed a Second Amended and Restated Secured Promissory Note in the principal amount of $1,627,500 in favor of Berley.  JX 10.

10.      In January 2020, a continuing UCC financing statement was filed on Berley's behalf for Debtor's pledged interests in SDSR111.  JX 12 at WINICK 2434.

11.      On July 9, 2020, Debtor received a letter from Berley's counsel at Kudman Trachten Aloe LLP indicating that Debtor was in default under the Second Amended and Restated Promissory Note for failing to pay quarterly interest in the amount of $24,412.50 due on May 1, 2020 and demanding that Debtor immediately pay the accelerated indebtedness of $1,651,912.50.  JX 13.

12.      On July 24, 2020, Debtor received a letter from Berley indicating that Berley proposed to retain Debtor's interests in SDSDR111 in full satisfaction of his unpaid obligations of $1,658,693.70.  JX 14.

13.    On July 24, 2020, Debtor received a separate letter from Berley's counsel at Kudman Trachten Aloe LLP attaching a consent to Berley's accepting Debtor's interests in SDSDR111 in full satisfaction of Debtor's indebtedness.  JX 15.

14.    On or about July 24, 2020, Debtor signed the consent provided by Berley's counsel, which authorized Berley's taking Debtor's interests in SDSDR111 in full satisfaction of Debtor's debt to Berley.  JX 16.

15.    The most recent pre-transfer valuation of Debtor's interests in SDSDR111 was performed in April 2017, and that valuation estimated his interests to be worth $2.5 million.  PX 51; Deposition of Jeffrey Winick at 140:20-141:6.

16.    Subsequent to the transfer, Debtor obtained a valuation of his interests in SDSDR111 for tax purposes, and that valuation opined the fair market value of Debtor's interests as of July 31, 2020 was $240,000.  DX 4.

17.    Debtor disclosed the transfer of his interests in SDSDR111 to Berley on his bankruptcy schedules.  JX 1 at 51.

18.    Before Debtor transferred his interests in SDSDR111 to Berley, he was contemplating bankruptcy, but he did not ultimately file until August 2020.  Winick Dep. at 136:19-22; JX 01.

19.    Debtor disclosed the transfer of his interests in SDSDR111 at the section 341 meeting conducted on October 8, 2020.  DX 2 at WINICK 5148-49.

20.    Postpetition, the Chapter 7 trustee's counsel requested information concerning the transfer of Debtor's interests in SDSDR111, and Debtor supplied that information.  DX 5; DX 6.

**Facts Relevant to Count II**

21.     Debtor scheduled "[t]wo Rolex watches" with a value of $5,000 in Schedule A/B. JX 1 at 14.

22.     Schedule A/B does not provide instructions to list the specific make or model number of any listed watch.  JX 1 at 11; *see also* JX 17.

23.     The instructions for Schedule A/B state that debtors should "report the *current value* of the property that you own in each category" and that "*[c]urrent value* is sometimes called *fair market value* and, for this form, is the fair market value as of the date of the filing of the petition."  JX 17 at 16.

24.     Debtor was advised by his bankruptcy counsel that he should put his best estimate as to the value of his Rolex watches and not be too concerned with that value because the Chapter 7 trustee would not accept any value Debtor listed without obtaining an independent appraisal. Deposition of Steven Wilamowsky at 31:3-17, 32:12-10, 39:14-40:8.

25.     After the petition was filed, the Chapter 7 trustee's counsel requested information concerning the Rolex watches, including "the date of manufacture, the model, the date of acquisition and the cost of acquisition" along with "[a]ny documents related to those items including insurance policies, receipts, bills of sale, or appraisals," and in response, Debtor provided photographs of the watches but informed the Chapter 7 trustee's counsel that the Debtor had no receipts, bills of sale, or other information regarding his watches.  DX 5 at WINICK 5155; DX 6 at WINICK 5159.

26.     At the Trustee's request, Debtor obtained an independent appraisal of the Rolex watches.  JX 26 at ¶ 9; *see also id.*, Ex. C.

27.     Christi Sothers Fine Jewelry conducted an appraisal of Debtor's two Rolex watches in November 2020.  It estimated that his "18kt Yellow Gold Rolex Yacht-Master 2, 2017 Ref. #116688M" was worth $38,000 and his "18kt/Stainless Steel Rolex Submariner 2009, Ref. # 116613" was worth $9,500.  JX 26 at Ex. C.

28.     Debtor and the Chapter 7 trustee subsequently entered into a stipulation to sell Debtor's Rolex watches to Debtor's son-in-law for $33,393.75 in cash, with Debtor receiving a $15,600 exemption for those watches, and the Court approved the sale.  JX 26 at Ex. B; JX 27.

## Facts Relevant to Count IV

## Debtor's Tax Liabilities and Payments

29.     Debtor always filed accurate and timely tax returns.  *See* Deposition of Stanley Cheung at 72:17-73:4.

30.     Between 2000 and 2005, Debtor failed to make quarterly estimated tax payments.  *See* JX 4.

31.     Debtor reached an installment agreement with the IRS to pay over $3.9 million by October 2012 to satisfy his 2000-2005 tax liabilities, which he complied with.  JX 4; PX 1 at USA 3194.

32.     For tax years 2012-2016, Debtor paid over $2.6 million in taxes from tax withholdings.  JX 5.

33.     From 2012 to 2016, Debtor incurred the following liabilities to the IRS resulting from his failure to make estimated tax payments:

| Tax Year | Taxable Income | Taxes Owed | Tax Withholdings | Tax Liability |
|----------|----------------|------------|------------------|---------------|
| 2012 | $7,922,503 | $2,958,768 | $676,747 | $2,282,021 |
| 2013 | $4,675,510 | $1,944,528 | $558,099 | $1,386,429 |
| 2014 | $4,911,103 | $2,100,533 | $276,518 | $1,824,015 |

| 2015 | $3,891,521 | $1,578,350 | $876,635 | $701,715 |
| 2016 | $2,412,311 | $995,865 | $251,377 | $744,488 |
| Totals | $23,812,948 | $9,578,044 | $2,639,376 | $6,938,668 |

JX 5.

34.     Debtor paid $25,000 toward his 2012 to 2016 tax liabilities in January 2014, in connection with a request to enter into an installment agreement.  JX 5 at USA 1702; PX 1 at USA 3256.

35.     The IRS entered into an installment with Debtor in July 2014, whereby he would pay $50,000 per month through November 2014, then $100,000 per month until his liabilities were fully paid.  JX 5 at USA 1702; PX 2.

36.     Debtor stopped making payments under this installment agreement after September 2014, and the IRS terminated the agreement in March 2015.  JX 5 at USA 1702.

37.     Debtor paid $25,000 toward his tax liabilities in April 2015 while requesting to enter into a new installment agreement with the IRS.  JX 5 at USA 1702.

38.     The IRS entered a second installment agreement with Debtor in October 2015, whereby he would pay $50,000 per month through November 2017, then $75,000 per month until his liabilities were fully paid.  JX 5 at USA 1702; PX 01 at USA 3295.

39.     Debtor stopped making full payments under the second installment agreement in August 2016, when he began paying only $25,000 per month.  JX 5 at USA 1703.

40.     Debtor stopped making payments under this second installment agreement after December 2016, and the IRS terminated the agreement in March 2017.  JX 5 at USA 1703.

41.     Debtor submitted an offer-in-compromise to the IRS in May 2017, offering $430,000, with a prepayment of $86,000.  JX 5 at USA 1704; JX 18.

42.     In September 2018, the IRS informed Debtor's power of attorney that his offer-in-compromise would be rejected, and Debtor subsequently withdrew his offer-in-compromise on September 26, 2018.  PX 1 at USA 3357; JX 05 at USA 1704.

43.     After his offer-in-compromise was withdrawn, Debtor made a payment of $50,000 toward his tax liabilities in November 2018, while requesting to enter into another installment agreement with the IRS.  JX5 at USA 1704.

44.     Under the terms of the IRS's third installment agreement with Debtor, he would pay $50,000 per month through December 2019, then $114,000 per month afterwards until his liabilities were fully paid.  PX 3.

45.     Debtor stopped making payments under this third installment agreement after he made a partial payment of $50,000 in January 2020.  JX 5 at USA 1705.

46.     From January 2014 through January 2020, Debtor made 43 payments to the IRS totaling over $1.94 million.  JX 5.

47.     Where the IRS agrees to an installment agreement with a taxpayer, it does not expect the taxpayer to pay more towards that taxpayer's back taxes than the agreed upon monthly amount.  Deposition of John Harrison at 140:5-21.

48.     At the time Debtor filed for bankruptcy in August 2020, his liabilities to the IRS were as summarized in the following table:

| Tax Period | Remaining Tax Due ($) | Penalties Due as of Petition Date ($) | Interest Due as of Petition Date ($) | Total Due as of Petition Date ($) |
|---|---|---|---|---|
| 2012 | 356,509.00 | 627,999.45 | 436,044.75 | 1,420,553.02 |
| 2013 | 1,386,429.00 | 416,699.65 | 413,433.23 | 2,216,561.88 |
| 2014 | 1,824,015.00 | 548,181.72 | 473,941.12 | 2,846,137.84 |
| 2015 | 701,715.00 | 207,987.26 | 155,801.40 | 1,065,503.66 |
| 2016 | 744,488.00 | 132,922.09 | 129,695.05 | 1,007,105.14 |

| Total | 5,013,156.00 | 1,933,790.17 | 1,617,915.55 | 8,564,861.72 |

JX 2 at 4.

49.     Debtor paid all of his taxes for 2017-2018.  *See* JX 2.

**Debtor's Gambling**

50.     Prior to 2019, with the exception of a brief break in the 1990s, Debtor had been gambling since he was 18 or 19 years old.

51.     Debtor's net gambling losses for each year between 2012 through 2016 exceeded his tax liabilities for each year, as summarized below:

| Tax Year | Net Tax Liability | Net Gambling Losses |
|----------|-------------------|---------------------|
| 2012 | $2,282,021 | $4,526,800 |
| 2013 | $1,386,429 | $2,417,450 |
| 2014 | $1,824,015 | $2,166,575 |
| 2015 | $701,715 | $971,115 |
| 2016 | $744,488 | $1,805,400 |
| Total | $6,938,668 | $11,887,340 |

JX 3 at WINICK 43.

52.     Debtor's net gambling losses for 2012 through 2016 totaled just under 50% of his total taxable income for that period.  *Compare* JX 3 *with* JX 5.

**Property Transfers**

53.     In 2002 or 2003, Debtor purchased the property located at 24 Parrish Pond Lane, Southampton, New York 11968.  In September 2003, Debtor sold the Southampton property to the Jeffrey Winick 1999 Insurance Trust, which named his daughter Danielle Winick as beneficiary.  Winick Dep. at 81:18-82:9; PX 1 at USA 3102, 3108; PX 5 at USA 1253.

54.     On September 13, 2012, Debtor sold his interest in 987 Eighth Avenue, LLC, a company owning a leasehold over real property, for $2 million.  PX 23.

55.     On September 11, 2012, Debtor created the Danielle Winick 2012 Trust, of which Debtor's daughter Danielle Winick was the primary beneficiary.  JX 24-7.

56.     In 2012, the Danielle Winick 2012 Trust formed a company, WRG NJ LLC, along with three additional members—Steven Baker, Louis Eisinger, and Darrell Rubens.  The Danielle Winick 2012 Trust held a 74% interest in WRG NJ LLC.  JX 28.

57.     On January 1, 2016, the trustee of the Danielle Winick 2012 Trust transferred the trust's interest in WRG NJ LLC to Debtor's daughter, Danielle Winick.  PX 50.

58.     On December 18, 2012, Debtor gifted shares of WTN Realty Corp. to his daughter.  PX 22.

59.     In 2013, the accounting firm Anchin, Block & Anchin LLP performed a valuation of the estimated fair market value of Class B Non-Voting Common Stock of WTN Realty Corp. on a non-controlling, non-marketable basis as of December 31, 2012, and concluded that the value of such stock was $12,540 per share.

60.     In 2018, the accounting firm Anchin, Block & Anchin LLP performed a valuation of the estimated fair market value of Class A and Class B Units of Winick Realty Group LLC on a non-controlling, non-marketable basis as of June 30, 2018, and concluded that the value of those Units was $737 per Unit.

61.     From 2010 through 2018, WTN Realty Corp. owned 6,750 out of Winick Realty Group LLC's 10,000 total Units.  PX 7 at USA 860.

62.     From 2013 through 2018, Danielle Winick Lapidus owned 117 out of WTN Realty Corp.'s 292.5 total issued stocks.  *See* PX 8 at USA 794.

63.     On September 30, 2014, Debtor sold his boat for almost $20,000.  PX 21.

64.     Between 2013 and 2018, Debtor gifted at least $655,000 in life insurance premiums to his daughter.  *See* JX 19-23.

## Debtor's Expenditures

65.     At some point after 2012, Mr. Winick paid $15,000 per month to rent his Manhattan apartment.  By 2014, the rent had increased to $17,000 per month, and by 2016, his rent further increased to $18,000 per month.  Winick Dep. at 37:7-13, 64:16-65:17.

66.     On October 1, 2003, Debtor entered into a lease agreement with the Jeffrey Winick 1999 Life Insurance Trust whereby he agreed to pay $150,000 per year to lease the Southampton property.  PX 6.

67.     Debtor paid $11,000 per month in rent for the Southampton property for February 2012 through June 2014, $68,000 for March through December 2015, $45,000 for January through June 2016, and $22,500 for July through September 2016.  PX 9.

68.     In 2012 through 2016, Debtor spent over $1,500 per year on association fees to the Parrish Pond Homeowners Association for the Southampton property.  PX 39.

69.     In the summer of 2016, Debtor spent over $6,000 on pest control services from Premier Pest Control for the Southampton property.  JX 25-4.

70.     From 2012 through 2014, Debtor paid between $5,350 and $6,700 per month to rent an apartment where his ex-wife and daughter resided.  PX 10-11.

71.     From 2013 through 2014, Debtor paid between $3,000 to $3,500 per month to rent an apartment for his daughter while she attended New York University as an undergraduate.  PX 12; Winick Dep at 34:8-24.

72.     From 2012 through 2013, Debtor paid approximately $75,000 per year in college tuition for his daughter.  PX 13 at WINICK 75, 100.

73.	In at least 2017, Debtor paid almost $500 per month to Spectrum for media services. JX 24-5.

74.	In 2012 and 2013, Debtor spent on average approximately $6,000 per year on boat storage fees at Strong's Marine.  PX 37.

75.	Between 2012 and 2016, Debtor paid, on average, over $1,000 per month in utilities for the Southampton property.  PX 14-17.

76.	Between 2014 and 2016, Debtor paid, on average, approximately $200 per month to Optimum for the Southampton property.  PX 18.

77.	Between 2012 and 2018, Debtor paid, on average, approximately $300 per month to DirecTV.  PX 19.

78.	Debtor used at least four different credit cards between 2012 and the time he filed for bankruptcy.  PX 32-35.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

In re:                             :

                                     :        Chapter 7

       JEFFREY WINICK,        :

                                     :        Case No. 20-11976 (PB)

                 Debtor.      :

---------------------------------------------------------x

UNITED STATES OF AMERICA,    :

                                     :        Adv. Proc. No. 21-01138 (PB)

              Plaintiff,     :

                                     :

      v.                           :

                                     :

JEFFREY WINICK,           :

                                     :

             Defendant.    :

---------------------------------------------------------x

## AMENDED JOINT TRIAL EXHIBITS

| Ex. | Description |
|---|---|
| JX 1 | Chapter 7 Petition and Schedules [Bankr. Dkt. No. 1] |
| JX 2 | IRS Proof of Claim [Bankr. Claim 2-1] |
| JX 3 | Gambling Losses [WINICK 1 – 43] |
| JX 4 | Income Transcripts for Tax Years 2000 – 2005 |
| JX 5 | Income Transcripts for Tax Years 2012 – 2016 |
| JX 6 | Secured Promissory Note dated January 29, 2015 [WINICK 2392 – 2400] |
| JX 7 | Modification and Extension of Secured Promissory Note dated November 2, 2015 [WINICK 2401 – 2402] |
| JX 8 | Amended and Restated Secured Promissory Note dated August 3, 2016 [WINICK 2403 – 2414] |
| JX 9 | Modification and Extension of Promissory Note dated August 1, 2018 [WINICK 2415 – 2416] |
| JX 10 | Modification and Extension of Amended and Restated Secured Promissory Note and Waiver dated August 1, 2019 [WINICK 2417 – 2418] |
| JX 11 | Second Amended and Restated Secured Promissory Note dated November 1, 2019 [WINICK 2419 – 2428] |
| JX 12 | UCC Lien Filings [WINICK 2429 – 2434] |
| JX 13 | Letter dated July 9, 2020 from William E. Hammond [WINICK 2455 – 2457] |
| JX 14 | Letter dated July 24, 2020 from David Berley [WINICK 2453 – 2454] |
| JX 15 | Letter dated July 24, 2020 from William E. Hammond [WINICK 2451 – 2452] |
| JX 16 | Consent dated July 24, 2020 [WINICK 2461] |
| JX 17 | Official Bankruptcy Form Instructions for Schedule A/B |

| Ex. | Description |
|---|---|
| JX 18 | Offer in Compromise [WINICK 2602 – 2622] |
| JX 19 | 2012 Gift Tax Return [WINICK 351 – 357] |
| JX 20 | 2013 Gift Tax Return [WINICK 358 – 364] |
| JX 21 | 2014 Gift Tax Return [WINICK 365 – 371] |
| JX 22 | 2015 Gift Tax Return [WINICK 372 – 378] |
| JX 23 | 2016 Gift Tax Return [WINICK 379 – 385] |
| JX 24 | Letter dated January 18, 2018 from Lauren Kazenoff and attachments [WINICK 568 – 1201],* including: <br> - JX 24-1: Letter dated January 18, 2018 [WINICK 568 – 569] <br> - JX 24-2: History of business interests [WINICK 575 – 576] <br> - JX 24-3: SDSDR111 LLC distribution history [WINICK 633] <br> - JX 24-4: 2017 AIG insurance policy [WINICK 673 – 675] <br> - JX 24-5: 2017 Spectrum bills [WINICK 929 – 969] <br> - JX 24-6: Dissolution of Danielle Winick 2012 Trust [WINICK 1121 –1122] <br> - JX 24-7: 2012 Danielle Winick Trust Agreement [WINICK 1123 – 1147] |
| JX 25 | Letter dated March 20, 2018 from Lauren Kazenoff and attachments [WINICK 1203 – 2084],* including: <br> - JX 25-1: Letter dated March 20, 2018 [WINICK 1203 – 1209] <br> - JX 25-2: 2018 AIG insurance policy [WINICK 1266 – 1267] <br> - JX 25-3: April 17, 2017 Anchin Letter [WINICK 1279] <br> - JX 25-4: Premier Pest Control Invoices [WINICK 1935 – 1947] |
| JX 26 | Trustee's Motion to Sell Rolex Watches [Bankr. Dkt. No. 34] |
| JX 27 | Order Approving Sale of Rolex Watches [Bankr. Dkt. No. 45] |
| JX 28 | WRG NJ LLC Operating Agreement [WINICK 449 – 463] |

---

* The parties are not submitting paper copies of the voluminous exhibits marked with an asterisk pursuant to the Court's instructions, but will provide electronic copies to the Court. These electronic copies have not been redacted pursuant to Federal Rule of Bankruptcy Procedure 9037(a), but the parties will redact any individual pages from these exhibits it displays during the trial. The parties have redacted the sub-exhibits listed above (e.g., JX 24-1, 24-2).

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
In re:                                                  :
                                                        :          Chapter 7
     JEFFREY WINICK,                 :
                                                        :          Case No. 20-11976 (PB)
               Debtor.    :
---------------------------------------------------------x
UNITED STATES OF AMERICA,                               :
                                                        :          Adv. Proc. No. 21-01138 (PB)
           Plaintiff,  :
                                                        :
     v.                                :
                                                        :
JEFFREY WINICK,                                         :
                                                        :
          Defendant.   :
---------------------------------------------------------x

## PLAINTIFF'S TRIAL EXHIBIT LIST

| Ex. | Description | Consent to Admissibility / Authenticity | Objections |
|-----|-------------|------------------------------------------|------------|
| PX 1 | IRS Archive History Transcript [USAO 3069 – 3373] | No / Yes | Hearsay (Fed. R. Evid. 802) |
| PX 2 | 2014 Installment Agreement [WINICK 555 – 566] | Yes / Yes | None |
| PX 3 | 2018 Installment Agreement [WINICK 567] | No / Yes | Incomplete (Fed. R. Evid. 106) |
| PX 4 | Southampton Home Appraisal [USA 1122 – 1156] | No / Yes | Relevance (Fed. R. Evid. 402) |
| PX 5 | 1999 Life Insurance Trust Agreement [USA 1247 – 1299] | No / Yes | Relevance (Fed. R. Evid. 402) |
| PX 6 | 2003 Southampton Lease Agreement [USA 1118 – 1121] | No / Yes | Relevance (Fed. R. Evid. 402) |
| PX 7 | Winick Realty Group Operating Agreement [USA 826 – 860] | Yes / Yes | None |
| PX 8 | WTN Realty Corp. Shareholders' Agreement [USA 794 – 802] | Yes / Yes | None |

| Ex. | Description | Consent to Admissibility / Authenticity | Objections |
|---|---|---|---|
| PX 9 | Southampton Home Rent Summary [WINICK 3795] | Yes / Yes | None |
| PX 10 | Lizette Cubria Rent Summary #1 [WINICK 3796] | Yes / Yes | None |
| PX 11 | Lizette Cubria Rent Summary #2 [WINICK 3793] | Yes / Yes | None |
| PX 12 | Danielle Winick Rent Summary [WINICK 3794] | Yes / Yes | None |
| PX 13 | 2012-2020 Income Tax Return [WINICK 49 – 350] | Yes / Yes | None |
| PX 14 | LIPA Bills [USA 1106] | Yes / Yes | None |
| PX 15 | PSEG Bills [USA 1110 – 1111] | Yes / Yes | None |
| PX 16 | SCWA Bills [USA 1112] | Yes / Yes | None |
| PX 17 | National Grid Bills [USA 1107 – 1108] | Yes / Yes | None |
| PX 18 | Optimum Bills [USA 1109] | Yes / Yes | None |
| PX 19 | DirectTV Bills [USA 1217 – 1219] | Yes / Yes | None |
| PX 20 | [EXHIBIT WITHDRAWN] | | |
| PX 21 | Sale of 2007 Cobalt Boat [WINICK 2273 – 2282] | No / Yes | Relevance (Fed. R. Evid. 402) |
| PX 22 | Assignment of Interest in WTN Realty Corp. [WINICK 2287] | Yes / Yes | None |
| PX 23 | Sale of 987 8th Ave. LLC [WINICK 2283 – 2286] | Yes / Yes | None |
| PX 24 | Donation to Hickenlooper [WINICK 2780 – 2781] | Yes / Yes | None |
| PX 25 | 2011-2017 CapitalOne Statements* [WINICK 2795 – 2904] | Yes / Yes | None |
| PX 25A | CapitalOne Statements (Summary Exhibit) | Yes / Yes | None |
| PX 26 | 2011-2017 TD Bank Statements* [WINICK 2905 – 3104] | Yes / Yes | None |
| PX 26A | TD Bank Statements (Summary Exhibit) | Yes / Yes | None |
| PX 26B | TD Bank Statements (Summary Chart Exhibit) | Yes / Yes | None |
| PX 27 | 2014- 2020 E-Trade Statements* [WINICK 310 – 3231] | Yes / Yes | None |
| PX 28 | 2012- 2020 Chase Statements* [WINICK 3232 – 3705] | Yes / Yes | None |
| PX 28A | Chase Statements (Summary Exhibit) | Yes / Yes | None |
| PX 28B | Chase Statements (Summary Chart Exhibit) | Yes / Yes | None |

* Plaintiff is not submitting paper copies of the voluminous exhibits marked with an asterisk pursuant to the Court's instructions, but will provide electronic copies to the Court. These electronic copies have not been redacted pursuant to Federal Rule of Bankruptcy Procedure 9037(a), but the parties will redact any individual pages from these exhibits that they display during the trial.

| Ex. | Description | Consent to Admissibility / Authenticity | Objections |
|---|---|---|---|
| PX 29 | 2015-2020 Chase Credit Card Statements* [WINICK 3706 – 3791] | Yes / Yes | None |
| PX 30 | Payments to Danielle Winick [WINICK 3792] | Yes / Yes | None |
| PX 31 | 2013-2019 Bloomingdale's Credit Card Statements* [WINICK 3822 – 3949] | Yes / Yes | None |
| PX 31A | Bloomingdale's Credit Card Statements (Summary Exhibit) | Yes / Yes | None |
| PX 32 | 2012-2020 Citi Credit Card Statements* [WINICK 3950 – 4277] | Yes / Yes | None |
| PX 32A | Citi Credit Card Statements (Summary Exhibit) | Yes / Yes | None |
| PX 33 | 2013-2020 Amex Credit Card Statements* [WINICK 4278 – 4882] | Yes / Yes | None |
| PX 33A | Amex Credit Card Statements (Summary Exhibit) | Yes / Yes | None |
| PX 33B | Amex Credit Card Statements (Summary Chart Exhibit) | Yes / Yes | None |
| PX 34 | 2013-2019 BoA Credit Card Statements* [WINICK 4883 – 5100] | Yes / Yes | None |
| PX 34A | BoA Credit Card Statements (Summary Exhibit) | Yes / Yes | None |
| PX 34B | BoA Credit Card Statements (Summary Chart Exhibit) | Yes / Yes | None |
| PX 35 | 2013-2017 FIA Credit Card Statements* [WINICK 5101 – 5142] | Yes / Yes | None |
| PX 35A | FIA Credit Card Statements (Summary Exhibit) | Yes / Yes | None |
| PX 36 | 2015 Jewelry Insurance Cancellation [WINICK 44 – 48] | No / Yes | Relevance (Fed. R. Evid. 402); Unfair Prejudice and Confusion (Fed. R. Evid. 403) |
| PX 37 | 2012-2013 Boat Storage Fees [USA 1212 – 1216] | Yes / Yes | None |
| PX 38 | 2011-2018 Mercedes Leases [USA 1300 – 1320] | Yes / Yes | None |
| PX 39 | 2012-2016 Homeowners Association Fees [USA 1220 – 1240] | Yes / Yes | None |
| PX 40 | [EXHIBIT WITHDRAWN] | | |
| PX 41 | January 18, 2018 Unsecured Loan to Berley [USA 1629 – 1636] | Yes / Yes | None |
| PX 42 | May 18, 2020 Email Waiving Loan Payment [USA 1337] | Yes / Yes | None |
| PX 43 | 2016-2020 SDSDR111 LLC K-1s [USA 1338 – 1368, 1668 -- 1686] | Yes / Yes | Relevance (Fed. R. Evid. 402); Unfair Prejudice and Confusion (Fed. R. Evid. 403) |

| Ex. | Description | Consent to Admissibility / Authenticity | Objections |
|---|---|---|---|
| PX 44 | December 2019 Eisinger-Hammond Emails [USA 1624 – 1626, UNSTAMPED] | No / No | Relevance (Fed. R. Evid. 402); Unfair Prejudice and Confusion (Fed. R. Evid. 403); Not Produced (Fed. R. Civ. P. 37(c)(1)) |
| PX 45 | Payment History on Berley Loans [USA 1627] | Yes / Yes | None |
| PX 46 | February 26, 2020 Payment Redirection [USA 1628] | Yes / Yes | None |
| PX 47 | November 1, 2019 Letter of Redirection [USA 1667] | Yes / Yes | None |
| PX 48 | [EXHIBIT WITHDRAWN] | | |
| PX 49 | Pest Control Invoices [WINICK 1935 – 1947] | Yes / Yes | None |
| PX 50 | Assignment of WRG NJ LLC [USA 2326] | Yes / Yes | None |
| PX 51 | [EXHIBIT WITHDRAWN] | | |
| PX 52 | May 1, 2014 RealDeal Article [UNSTAMPED] | Yes / Yes | None |
| PX 53 | Online Rolex Valuations [UNSTAMPED] | No / Yes | Relevance (Fed. R. Evid. 402); Unfair Prejudice and Confusion (Fed. R. Evid. 403); Not Produced (Fed. R. Civ. P. 37(c)(1))† |
| PX 54 | December 19, 2019 Payment Redirection [UNSTAMPED] | No / Yes | Relevance (Fed. R. Evid. 402); Unfair Prejudice and Confusion (Fed. R. Evid. 403); Not Produced (Fed. R. Civ. P. 37(c)(1)) |
| PX 55 | July 2020 Eisinger-Wilamowsky Emails [UNSTAMPED] | Yes / Yes | None |
| PX 56 | Curriculum Vitae – Ilene Zwirn, M.D. [UNSTAMPED] | Yes / Yes | None |
| PX 57 | Diagnostic and Statistical Manual – 5th Edition (excerpts) [UNSTAMPED] | Yes / Yes | None |
| PX 58 | Winick Powers of Attorney [WINICK 2588 – 2601] | Yes / Yes | None |

† These objections were overruled by the Court in its October 4, 2023, bench ruling.

| Ex. | Description | Consent to Admissibility / Authenticity | Objections |
|---|---|---|---|
| PX 59 | Winick Wages (2017-2019) | No / Yes | Relevance (Fed. R. Evid. 402); Not Produced (Fed. R. Civ. P. 37(c)(1)) |
| PX 60 | Winick 2018 Gift Tax Return [WINICK 394 – 401] | Yes / Yes | None |
| PX 61 | Winick 2017 Gift Tax Return [WINICK 386 – 393] | Yes / Yes | None |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re:                                                    :
                                                          :          Chapter 7
     JEFFREY WINICK,                 :
                                                          :          Case No. 20-11976 (PB)
                 Debtor.     :
-----------------------------------------------------------x
UNITED STATES OF AMERICA,                                 :
                                                          :          Adv. Proc. No. 21-01138 (PB)
                Plaintiff,     :
                                                          :
     v.                                      :
                                                          :
JEFFREY WINICK,                                           :
                                                          :
               Defendant.     :
-----------------------------------------------------------x

## DEFENDANT'S TRIAL EXHIBIT LIST

| Ex. | Description | Consent to Admissibility / Authenticity | Objections |
|-----|-------------|------------------------------------------|------------|
| DX 1 | Expert Report of Dr. Jeremiah Weinstock | No / Yes | Hearsay |
| DX 2 | Transcript of 341 Meeting of Creditors [WINICK 5144 – 5153] | Yes / Yes | None |
| DX 3 | IRS Federal Tax Lien Notices [WINICK 2654 – 2665] | Yes / Yes | None |
| DX 4 | Valuation of SDSR111 LLC dated June 29, 2021 [WINICK 2085 – 2143] | Yes / Yes | None |
| DX 5 | Letter dated October 21, 2020 from Fred Stevens [WINICK 5154 – 5157] | No / Yes | Fed. R. Civ. P. 37(c)(1) |

| Ex. | Description | Consent to Admissibility / Authenticity | Objections |
|---|---|---|---|
| DX 6 | Letter dated November 5, 2020 from Steven Wilamowsky [WINICK 5158 – 5159] | No / Yes | Fed. R. Civ. P. 37(c)(1) |
| DX 7 | Power of Attorney dated May 27, 2015 [WINICK 2590 – 2591] | Yes / Yes | None |
| DX 8 | List of Medication [WINICK 5143] | No / Yes | Fed. R. Civ. P. 37(c)(1); Relevance |
| DX 9 | Summary Exhibit of Defendant's Payments to Taxing Authorities from Chase Bank Account | Yes / Yes | None |
| DX 10 | Curriculum Vitae of Jeremiah Weinstock, Ph.D. | Yes / Yes | None |