**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

JEFFREY WINICK

                              Debtor.

UNITED STATES OF AMERICA,

                              Plaintiff,

      - against –

JEFFREY WINICK,

                              Defendant.

Chapter 7
No. 20-11976 (PB)

Adversary Proceeding No. 20-1138 (PB)

# THE UNITED STATES OF AMERICA'S
# POST-TRIAL REPLY MEMORANDUM OF LAW

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2728
Fax: (212) 637-2717
E-mail: zachary.bannon@usdoj.gov

ZACHARY BANNON
JEAN-DAVID BARNEA
Assistant United States Attorneys
– Of Counsel –

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

    I.    Winick Is Responsible for His Agents' Misrepresentations to the IRS ............................... 2

    II.    Section 523(a)(1)(C) Imposes a General Intent Standard ................................................. 4

    III.    Winick's Gambling Disorder Did Not Render His Behavior Non-Volitional .................. 8

    IV.    Winick Fraudulently Transferred the Interest to Berley ................................................. 10

    V.    Winick Lied on His Bankruptcy Schedules ....................................................................... 12

CONCLUSION ....................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Booker v. Brown & Williamson Tobacco Co.*,
  879 F.2d 1304 (6th Cir. 1989) ............................................................................... 5

*Feschbach v. IRS*,
  594 B.R. 495 (M.D. Fla. 2018) ............................................................................. 8

*Hawkins v. Franchise Tax Bd.*,
  769 F.3d 662 (9th Cir. 2014) ................................................................................ 1

*Hochstein v. United States*,
  900 F.2d 543 (2d Cir. 1990) ................................................................................. 7

*In re Bryan*,
  612 B.R. 618 (Bankr. N.D. Okla. 2020) ........................................................... 3, 4

*In re Carmel*,
  134 B.R. 890 (Bankr. N.D. Ill. 1991) ................................................................... 9

*In re Fegeley*,
  118 F.3d 979 (3d Cir. 1997) ......................................................................... 5, 6, 8

*In re Feshbach*,
  974 F.3d 1320 (11th Cir. 2020) ............................................................................ 6

*In re Feynman*,
  77 F.2d 320 (2d Cir. 1935) ................................................................................... 8

*In re Hart*,
  563 B.R. 15 (Bankr. D. Idaho 2016) .............................................................. 11, 12

*In re Payroll Express Corp.*,
  186 F.3d 196 (2d Cir. 1999) ............................................................................. 2, 3

*In re Toti*,
  24 F.3d 806 (6th Cir. 1994) .................................................................................. 7

*In re Tudisco*,
  183 F.3d 133 (2d Cir. 1999) ............................................................................. 5, 6

*In re Wong*,
  291 B.R. 266 (Bankr. S.D.N.Y. 2003) .................................................................. 4

*In re Zimmerman*,
    353 B.R. 310 (S.D. Fla. 2006) ............................................................................ 5, 6

*Kawaauhau v. Geiger*,
    523 U.S. 57 (1998) ................................................................................................. 6

*Morimura, Arai & Co. v. Taback*,
    279 U.S. 24 (1929) ............................................................................................... 12

*Safeco Ins. Co. of Am. v. Burr*,
    331 U.S. 47 (2007) ................................................................................................. 7

*United States v. Carmel*,
    801 F.2d 997 (7th Cir. 1986) ................................................................................. 9

*United States v. Coney*,
    689 F.3d 365 (5th Cir. 2012) ................................................................................. 6

*United States v. Landau*,
    956 F. Supp. 1160 (S.D.N.Y. 1997) ...................................................................... 9

*United States v. Maria*,
    186 F.3d 65 (2d Cir. 1999) .................................................................................... 7

*Wilkins v. United States*,
    598 U.S. 152 (2023) ............................................................................................... 8

**Statutes**

11 U.S.C. § 523 .............................................................................................. 2, 5, 7, 10

11 U.S.C. § 727 ................................................................................................ 2, 11, 12

26 U.S.C. § 6653 ........................................................................................................ 9

26 U.S.C. § 6672 ........................................................................................................ 7

26 U.S.C. § 7201 ........................................................................................................ 6

The United States of America, by its attorney Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this reply post-trial brief in the above-captioned adversary proceeding.[1]

## **PRELIMINARY STATEMENT**

Faced with an overwhelming record establishing his willful tax evasion, Winick's opposition brief resorts to an age-old strategy: deny personal responsibility and blame others. Winick didn't say he had only one watch—his colleague did. *See* Def. Br. at 6. Winick didn't value his watch at $5,000—his counsel did. *Id.* at 8. Winick didn't act suspiciously in his loan transaction with Berley—Berley did. *Id.* at 12. Winick didn't undervalue his Interest in an LLC—a third-party appraiser did. *Id.* at 14 n.15. Winick didn't lie to the IRS about his tax withholdings—his tax representatives did. *Id.* at 18-19. Winick didn't propose a patently inadequate OIC to resolve his tax debts—his representative did. *Id.* at 19. Winick didn't spend excessively—his daughter and ex-girlfriend did. *Id.* at 20. Winick didn't decide to transfer assets to his daughter—his accountants did. *Id.* at 22-24. And Winick didn't *choose* to spend money gambling at casinos—that was the fault of his addiction. *Id.* at 33-35.

"[T]he rich" do not have "an unfettered ability to dodge taxes with impunity." *Hawkins v. Franchise Tax Bd.*, 769 F.3d 662, 670 (9th Cir. 2014) (Rawlinson, J, dissenting). Winick's attempts to shift blame for his behavior onto a cadre of hired assistants and family members shows that he believes otherwise. But as the Government's opening brief explains, the weight of authority and substantial evidence establishes that Winick willfully evaded his taxes, transferred his assets

---

[1] This brief cites the Government's opening post-trial brief, Dkt. No. 75, as "Gov. Br." and the Defendant's post-trial brief, Dkt. No. 77, as "Def. Br." It uses capitalized terms and abbreviations defined in the opening brief.

to frustrate the IRS, and lied on his bankruptcy schedules. Accordingly, the Court should grant the Government judgment on Counts I, II, and IV of its adversary complaint.

## ARGUMENT

For the reasons set forth in the Government's opening brief, Winick: (1) willfully evaded his tax liabilities for the Tax Years in violation of 11 U.S.C. § 523(a)(1)(C), *see* Gov. Br. at 2-22; (2) transferred the Interest with intent to delay, hinder, or defraud the IRS in violation of 11 U.S.C. § 727(a)(2), *see id.* at 23-28; and (3) made false oaths regarding the value of his Rolex watches on his bankruptcy schedules in violation of 11 U.S.C. § 727(a)(4)(A), *see id.* at 28-32. As explained below, Winick's arguments to the contrary are without merit.

### I. Winick Is Responsible for His Agents' Misrepresentations to the IRS

Winick's tax representatives repeatedly lied to the IRS about his tax payments to secure new installment agreements for Winick. Gov. Br. at 6-7. In response, Winick incorrectly argues that his agents' conduct cannot be imputed to him and that, even if it could be, the IRS did not reasonably rely on their misrepresentations. Def. Br. at 18-19.

Winick does not deny that Rutter or Kazenoff made statements to the IRS within the scope of their agency relationship with him. *See* PX 57 (authorizations). He instead argues that he is not responsible for his agents' misstatements because "[t]he Government cites no cases imputing behavior to a taxpayer for purposes of section 523(a)(1)(C)." Def. Br. at 18. But the principle that an agent's behavior can be imputed to a principal is not tax-specific; it rests on applicable principles of agency, which are the law in the Second Circuit. *See In re Payroll Express Corp.*, 186 F.3d 196, 207 (2d Cir. 1999) ("The general rule is that a representation made by an authorized agent of the principal is binding upon the principal."); *see also* Restatement (Second) of Agency § 257(c) ("A principal is subject to liability for loss caused by the other's reliance upon a tortious

representation of a servant or other agent, if the representation is within the power of the agency to make for the principal"); Restatement (Third) of Agency § 7.08(a) ("A principal is subject to vicarious liability for a tort committed by an agent in dealing or communicating with a third party . . . when actions taken by the agent with apparent authority constitute the tort."); *see also id.*, cmt. a (stating that "[s]uch torts include fraudulent and negligent misrepresentations").

Winick also incorrectly suggests that his agents' representations were not false and that, in any event, the IRS did not rely upon them. Def. Br. at 18-19. For example, while negotiating an installment agreement in May 2014, Winick's agent told the IRS that Winick was "not liable to pay" estimated taxes because he "didn't make much income for 2014." PX 1 at 3273. Winick argues that the IRS could not have relied on this statement because it *knew* Winick earned more than $500,000 in the first half of 2014 based on a paystub Winick provided to a Revenue Officer in June 2014. *See* Def. Br. at 18 (citing PX 1 at 3275). That paystub appears to indicate appropriate tax withholdings for the salary reflected therein, buttressing the notion that Winick "g[ot] paid on w-2 and ha[d] sufficient withholding taxes for 2014." PX 1 at 3278. But the paystub does not appear to reflect the additional non-salary commission income Winick confirmed at trial that he earned in early 2014, from which taxes were not withheld. *See* 10/16 Tr. 109:3-5 (Winick acknowledging that he made at least "some commissions between January and May of 2014"); *id.* at 107:17-22 (Winick acknowledging that taxes were not withheld from his commission income).[2] In other words, Winick's submission of this paystub as part of his request for an installment agreement, without further context, only compounds his agent's misrepresentation to the IRS.

---

[2] This trial admission contradicts the assertion in Winick's post-trial brief that he did not earn any of the $4.9 million he received in 2014 commission income until *after* June 2014. Def. Br. at 19. *See In re Bryan*, 612 B.R. 618, 626 (Bankr. N.D. Okla. 2020) (noting that debtor is "not free to disregard the record made at trial" during post-trial briefing).

3

Winick's attempt to defend his other agent's assertion that he was "completely on [withholding]" in August 2015, PX 1 at 3289, fares no better. Winick claims that this statement may not have been false "at the time it was made," Def. Br. at 19—suggesting that his income in the first half of 2015 was solely salary subject to withholding. But Winick's 2015 full-year income consisted of approximately $2.2 million subject to withholding and $1.7 million that was not subject to withholding. PX 13 at 132. And Winick acknowledges that he earned approximately $1.9 million between January and July 2015. *See* Def. Br. at 19 (citing PX 1 at 3291). Winick cites no evidence, nor is it plausible, that his income for the first seven months of that year—representing about half of his annual earnings—consisted entirely of salary subject to withholdings, and that he earned all of his commissions for the year, and little else, in the remaining five months. Winick further asserts, outrageously, that the IRS should have figured out his agent was lying by comparing his earnings through mid-2015 to his tax payment patterns from previous years. *See id.* But such a standard would be an invitation for taxpayers to lie to the IRS, and it is not the law. *Cf. In re Wong*, 291 B.R. 266, 275-76 (Bankr. S.D.N.Y. 2003) (parties "are not required to conduct an investigation outside of ordinary business practices before entering into agreements" with counterparties and that "courts should not use the reasonable reliance requirement to second guess" a parties' decision).

In short, the preponderance of the evidence supports the conclusion that Winick's agents lied to the IRS to secure installment agreements on his behalf. General principles of agency law require that Winick be held responsible for those misrepresentations.

## II. Section 523(a)(1)(C) Imposes a General Intent Standard

As set forth in the Government's opening brief, precedent, principles of civil willfulness, and policy all support the conclusion that, in the Second Circuit, the Government need only prove

4

general intent to show that a taxpayer "willful[ly]" evaded taxes in violation of 11 U.S.C. § 523(a)(1)(C). *See* Gov. Br. at 13-17. Winick advocates for a specific intent standard, *see* Def. Br. at 26-31, but his arguments do not overcome the weight of authority against his position.

As an initial matter, Winick's textual argument is without merit. Section 523(a)(1)(C) prohibits a taxpayer from "willfully attempt[ing] in any manner to evade or defeat [a] tax." Winick claims that the statute's use of "evade or defeat" requires specific intent. But the Second Circuit has instead held that "evade or defeat" describes the prohibited conduct element, not the *mens rea* element; and that "willfully" describes the *mens rea* requirement. *See In re Tudisco*, 183 F.3d 133, 136 (2d Cir. 1999) ("The willfulness exception consists of a *conduct element* (*an attempt to evade or defeat taxes*) and a mens rea requirement (willfulness)." (emphasis added)). Giving away property and money (as Winick did in spades, *see* Gov. Br. at 9-11) is *conduct* that *defeats* a tax liability because it makes it impossible for a taxpayer to pay those taxes. *See, e.g.*, *In re Zimmerman*, 353 B.R. 310, 315 (S.D. Fla. 2006) ("[I]ntra-family transfers which lack consideration constitute an attempt to evade or defeat a tax for purposes of 11 U.S.C. § 523(a)(1)(C)."). But the word "defeat" says nothing about whether such giveaways must be anything more than intentional to violate § 523(a)(1)(C). If anything, the statute's use of "in any manner" emphasizes the *breadth* of its reach. *See In re Fegeley*, 118 F.3d 979, 983 (3d Cir. 1997) ("We must give weight to the fact that Congress included the phrase 'in any manner' in" § 523(a)(1)(C)."); *cf. Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989) (describing the phrase "participated in any manner" in another statute to confer "exceptionally broad protection").

Second, Winick argues that the word "willful" should be interpreted consistently between 11 U.S.C. §§ 523(a)(1)(C) and 523(a)(6). Def. Br. at 27. Under Section 523(a)(6), a debtor may

5

not discharge a debt "for willful and malicious injury by the debtor . . . ." Because in § 523(a)(6), "[t]he word 'willful' . . . modifies the word 'injury,'" the Supreme Court has interpreted this language to refer to when the debtor caused a "deliberate or intentional injury," which requires showing "that the actor intended the *consequences* of an act, not simply the act itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (internal quotation marks omitted) (emphasis in original). In contrast, "willful" in § 523(a)(1)(C) modifies "attempt to evade or defeat," which the Second Circuit has held is the "*conduct* element." *In re Tudisco*, 183 F.3d at 136 (emphasis added); *see also In re Zimmerman*, 353 B.R. at 315 (a "transfer[] which lack[s] consideration is conduct "constitut[ing] an attempt to evade or defeat a tax for purposes of 11 U.S.C. § 523(a)(1)(C)"). Because "willful" modifies the required *conduct* in § 523(a)(1)(C) but the necessary *consequences* in § 523(a)(6), § 523(a)(1)(C) requires a showing of "deliberate and intentional" *conduct*—that is, general intent[3]—not conduct that causes "deliberate and intentional" *consequences*, like in § 523(a)(6).

Third, Winick argues that "willfully" should be interpreted consistently with a parallel criminal provision in the Internal Revenue Code, 26 U.S.C. § 7201. Def. Br. at 28. Circuit courts have repeatedly rejected this exact argument. *See, e.g.*, *In re Fegeley*, 118 F.3d at 984 (declining to interpret 11 U.S.C. § 523 "consistently with the criminal provisions of the Internal Revenue Code"); *accord United States v. Coney*, 689 F.3d 365, 374 (5th Cir. 2012); *In re Feshbach*, 974

---

[3] To the extent Winick suggests the *Kawaauhau* Court's interpretation of "willful" as "deliberate or intentional" should also apply to § 523(a)(1)(C), the Government does not disagree, as that standard is consistent with the Second Circuit's holding that "[t]he mens rea requirement of § 523(a)(1)(C) mandates that the debtor's conduct be undertaken voluntarily, consciously or knowingly, and intentionally." *In re Tudisco*, 183 F.3d at 137 (internal quotation marks omitted)). As discussed in the Government's opening brief, Gov. Br. 2-13, Winick's spending, property transfers, IRS payment history, failure to pay estimated taxes, or use of company assets easily satisfies this standard.

6

F.3d 1320, 1331 (11th Cir. 2020). That is because "in criminal law 'willfully' typically narrows otherwise sufficient intent, making the government prove something extra, in contrast to its civil law usage, giving a plaintiff a choice of mental states to show in making a case for liability." *Safeco Ins. Co. of Am. v. Burr*, 331 U.S. 47, 60 (2007). "The vocabulary of the criminal side of [a statute] is consequently beside the point in construing the civil side." *Id.* Rather, this Court should look to analogous language in *civil* tax laws, like 26 U.S.C. § 6672, to conclude that the applicable standard is general intent. *See Hochstein v. United States*, 900 F.2d 543, 549 (2d Cir. 1990) ("[A]n individual's good or bad motive in failing to collect and pay taxes is irrelevant to the willfulness determination."); *see also In re Toti*, 24 F.3d 806, 809 (6th Cir. 1994) (interpreting 11 U.S.C. § 523(a)(1)(C)'s "willfulness" requirement "consistent with the definition found in other civil tax cases").

Fourth, Winick seeks to rely, *see* Def. Br. at 28, on a passing reference in a Senate Report pre-dating the modern Bankruptcy Code to the non-dischargeability of "tax claims with respect to which the debtor filed a fraudulent return . . . or fraudulently attempted to evade or defeat any tax." S. Rep. No. 95-989, 95th Cong., 2d Sess., at 78 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787. But the ultimately enacted statute refers to "fraudulent" returns and "willful" attempts to defeat taxes, rather than using "fraudulent" to modify both terms. 11 U.S.C. § 523(a)(1)(C). An undeveloped, passing reference in a Senate Report cannot trump Congress's use of different language in a statute. *See United States v. Maria*, 186 F.3d 65, 71 (2d Cir. 1999) ("As a general matter, the use of different words within the same statutory context strongly suggests that different meanings were intended.").

Finally, Winick argues that a strict scienter requirement comports with the "fresh start" policy animating the Bankruptcy Code. Def. Br. at 29. But the Bankruptcy Code provides a

7

"'fresh start' . . . only to the 'honest but unfortunate debtor.'" *In re Fegeley*, 118 F.3d at 982-83 (quoting *Grogan v. Garner*, 498, U.S. 279, 286-87 (1991)). Even if such policy concerns were relevant here, as explained in the Government's opening brief, Winick transferred millions' worth of assets to friends and family while living in luxury homes, taking expensive vacations, and going on shopping sprees. Gov. Br. at 2-13. He can hardly be described as "honest but unfortunate." In this case, the countervailing policy concern of disincentivizing "spendthrift behavior in spite of—or even because of—financial obligations to creditors," would thus plainly prevail. *Feschbach v. IRS*, 594 B.R. 495, 501 n.4 (M.D. Fla. 2018). After all, "[t]he law forbids all efforts to put property beyond the reach of creditors, no matter what its value; so long as courts are tolerant of such conduct, men will engage in it and the purposes of the bankruptcy act will be balked." *In re Feynman*, 77 F.2d 320, 322 (2d Cir. 1935).

This Court should thus apply a general intent standard in assessing Winick's willfulness under § 523(a)(1)(C).

**III.   Winick's Gambling Disorder Did Not Render His Behavior Non-Volitional**

Under the general intent standard, Winick's *only* defense is that his "predicament stems from his failure to pay estimated taxes, which was in turn a result of his gambling addiction." Def. Br. at 33. This argument fails for numerous reasons.

First of all, Winick has forfeited this argument. In a motion *in limine*, Winick sought to preclude Dr. Zwirn from testifying about his "volition to pay taxes," because, he claimed, "at no point in his report or deposition did Dr. Weinstock claim that [his] non-volitional gambling rendered his failure to pay taxes non-volitional as well." Dkt. No. 57 at 1, 7. He thus cannot now argue that his non-payment of estimated taxes was not volitional. *See Wilkins v. United States*,

8

598 U.S. 152, 158 (2023) ("[D]octrines like waiver and estoppel ensure efficiency and fairness by precluding parties from raising arguments they had previously disavowed.").[4]

Even if Winick could properly make this argument, it does not negate the willfulness of his other conduct, like his lavish spending and property transfers, which independently require the denial of discharge of his tax debt. Winick paradoxically claims that he lacked general intent with respect to that conduct, *see* Def. Br. at 34-35, without denying that he knowingly and voluntarily spent money and transferred assets. While Winick asserts that he did not intend through this conduct to defraud the IRS, *see generally id.* at 21-26, that would only be relevant for specific intent. And even if that standard applied, overwhelming circumstantial evidence establishes that Winick acted with specific intent. Gov. Br. at 20-22.

Moreover, Winick's argument ignores the decisions holding that gambling addiction is not a *mens rea* defense to non-gambling crimes. *See United States v. Carmel*, 801 F.2d 997, 999 (7th Cir. 1986) (collecting cases). One of the cases the Government cited held that "as a matter of law, . . . [a] [d]ebtor's compulsive gambling disorder does not operate to prevent [a] [d]ebtor from forming the requisite fraudulent intent to evade payment of taxes," under the civil tax statute, 26 U.S.C. § 6653. *In re Carmel*, 134 B.R. 890, 908 (Bankr. N.D. Ill. 1991). Winick seeks to distinguish the cases cited by the Government by noting that they did not specifically involve § 523(a)(1)(C). Def. Br. at 33 n.36. But these cases hold that addiction defenses do not defeat general-intent *mens rea*, like willfulness, a conclusion that applies to the statute at issue in this case and many others. *Cf. United States v. Landau*, 956 F. Supp. 1160, 1162 (S.D.N.Y. 1997)

---

[4] The argument is also counterfactual. Winick chose to make estimated tax payments until 2012 and again starting in 2017. *See* 10/16 Tr. 95:10-23, 98:7-9. He presented no evidence at trial about any relevant changes in the extent of his gambling addiction during the intervening years.

9

(holding that voluntary intoxication is not a defense to a general-intent crime and that intoxication is voluntary as a matter of law even if it results from addiction).

Finally, Dr. Weinstock's testimony does not factually support Winick's proposed *mens rea* defense. As summarized in Winick's brief, Dr. Weinstock testified that Winick could exercise "small degrees of volition" but that "the consequences of not paying taxes were not sufficiently aversive for [him] to make the conscious choice to gamble with post-tax dollars." Def. Br. at 34 (citing 10/20 Tr. 51:11-52:14, 89:18-90:9). But, as Dr. Weinstock acknowledged on cross-examination, Winick was able, while gambling, to maintain sufficient finances to support renting multiple luxury residences and gratuitously transferring millions of dollars' worth of cash and assets to his daughter. 10/20 Tr. 84:10-14. Moreover, he was capable of deciding to gamble with only his post-tax earnings both before 2012 and after 2016 (while making some, but insufficient tax payments in the interim) and was even able to quit gambling altogether with no assistance in 2019. *Id.* at 86:15-17, 93:2-95:20. This is no "small degree[] of volition." Indeed, according to Winick (and Dr. Weinstock), the only limitation his gambling disorder supposedly imposed on him was to prevent him from fully paying his taxes for five years—all while he maintained an exorbitant lifestyle and transferred millions in assets without impairment. *See also* 11/1 Tr. 47:23-48:8 (Dr. Zwirn, noting that Winick could always "assess[] what he could and could not afford" and "maintain[] his business and his work there" despite his gambling disorder).

Winick thus had the requisite scienter, and the Government should accordingly prevail on its 11 U.S.C. § 523(a)(1)(C) claim.

IV. **Winick Fraudulently Transferred the Interest to Berley**

The Government has presented overwhelming circumstantial evidence that Winick transferred his Interest in SDSDR111 LLC to David Berley with intent to delay, hinder, or defraud

the IRS. *See* Gov. Br. at 23-28. Winick's arguments to the contrary are insubstantial, but a few points warrant a response.

<u>First</u>, Winick all but concedes he knew of the IRS's lien on the Interest when he pledged it as collateral to Berley, instead arguing that his knowledge is not relevant because he pledged the Interest as collateral outside the one-year period applicable to 11 U.S.C. § 727(a)(2) claims. Def. Br. at 10. But conduct may be relevant to a § 727(a)(2) claim even if it occurs more than one year before a bankruptcy filing if it tends to show that a transfer *during* the one-year period was fraudulent, as is the case here. *See In re Hart*, 563 B.R. 15, 41-44 (Bankr. D. Idaho 2016) (overruling relevance objection for similar reasons). Furthermore, Winick's knowledge of the IRS lien in 2015, paired with the repeated reminders of IRS liens that Winick received as he accrued new liabilities, *see* 10/16 Tr. 78:24-79:23 (discussing subsequent lien mailings); DX 3 (lien notices), renders it implausible that he did not remember the 2015 lien when he transferred the Interest to Berley.

<u>Second</u>, Winick's argument that the IRS is to blame for failing to assert its superior lien on the Interest prior to his transfer of it to Berley in 2020 is without merit. *See* Def. Br. at 11. As John Harrison testified, the IRS was prohibited from bringing litigation to assert the priority of its lien by Winick's pattern of bad-faith installment agreements and offers-in-compromise, and the concomitant restrictions on IRS collection activities. 10/16 Tr. 40:12-17, 55:17-23.

And <u>third</u>, Winick argues that he cannot be blamed for the decision to fully pay his *unsecured* loan from Berley without paying any principal on Berley's *secured* loan (*see* Gov. Br. at 25-26 for a full discussion of this payment history) because it was *Berley's* idea to allocate Winick's payments that way. *See* Def. Br. at 12. Given the close personal friendship between the two and Winick's history of being less than truthful, *see* Gov. Br. at 6-7, 21-22, 28-29, the Court

should not credit this argument. Indeed, the fact that Berley *declined* a $50,000 payment from Winick on the secured loan only two months before he foreclosed on the Interest, *see* PX 42, suggests that they planned for Berley to foreclose on the Interest rather than receive payment from Winick under their agreement.

For these reasons and those stated in the Government's moving brief, the Government has thus proven by a preponderance of the evidence that Winick transferred the Interest in violation of 11 U.S.C. § 727(a)(2).

V. **Winick Lied on His Bankruptcy Schedules**

Finally, Winick lied on his bankruptcy schedules by valuing his two Rolexes at $5,000. *See id.* at 28-32. Winick seeks to blame his long-time assistant, Louis Eisinger, and his bankruptcy counsel, Steven Wilamowsky, for his errors. Def. Br. at 6 (stating that Eisinger made an error by initially listing one Rolex watch as being worth $5,000); *id.* at 7-8 (arguing that Wilamowsky came up with the watches' valuation). But Winick does not deny that he undertook no diligence to value his watches—the very definition of reckless indifference to the truth. *Morimura, Arai & Co. v. Taback*, 279 U.S. 24, 33 (1929) (noting that individuals act "with reckless indifference to the actual facts" when they make a statement "without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct"). And his false statement about the value of his watches undeniably shifted the burden onto the Chapter 7 Trustee to determine their value, thus impacting the estate. *See* Def. Br. at 9. The Government has thus proven by a preponderance of the evidence that Winick violated 11 U.S.C. § 727(a)(4)(A).

## CONCLUSION

For the reasons stated herein and in the Government's opening brief, the Court should enter judgment in the Government's favor on Counts I, II, and IV of its adversary complaint.

Dated: New York, New York
December 11, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: */s/ Zachary Bannon*
ZACHARY BANNON
JEAN-DAVID BARNEA
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007