**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

    JEFFREY WINICK

                           Debtor.

UNITED STATES OF AMERICA,

                      Plaintiff,

    - against –

JEFFREY WINICK,

                      Defendant.

Chapter 7
No. 20-11976 (PB)

Adversary Proceeding No. 20-1138 (PB)

# THE UNITED STATES OF AMERICA'S
# POST-TRIAL SUPPLEMENTAL MEMORANDUM OF LAW

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2728
Fax: (212) 637-2717
E-mail: zachary.bannon@usdoj.gov
       jean-david.barnea@usdoj.gov

ZACHARY BANNON
JEAN-DAVID BARNEA
Assistant United States Attorneys
– Of Counsel –

The United States of America, by its attorney Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this post-trial supplemental memorandum of law in response to the Court's order dated May 8, 2024, which asked the parties to address whether a finding that Winick was aware of the IRS's senior lien when he transferred his interest in SDSDR111 LLC to David Berley in July 2020 would warrant the conclusion that the Defendant intended to hinder or delay the IRS's collection efforts under 11 U.S.C. § 727(a)(2)(A). Dkt. No. 78. The Court's order further specified that the briefs should address the "natural consequences" doctrine in their analyses. *Id.*

The "natural consequences" doctrine leads to the ineluctable conclusion that Winick intended to delay, hinder or defraud the IRS. Specifically, the natural consequence of Winick's transfer of his interest in SDSDR111 LLC to Berley, who indisputably had a lien junior to the IRS's lien, was to delay, hinder, or defraud IRS. That fact is sufficient to establish Winick's intent to delay, hinder or defraud the IRS under both the majority view of the "natural consequences" doctrine set forth in *In re Sentinel Management Group, Inc.*, 728 F.3d 660 (7th Cir. 2013), and in the minority view of that doctrine explicated in cases like *In re Lyondell Chemical Co.*, 554 B.R. 635 (S.D.N.Y. 2016). The overwhelming evidence adduced at trial supports this conclusion.

Moreover, and for the reasons set forth in the Government's post-trial brief, the Court need not address the "natural consequences" doctrine to conclude that Winick acted with intent to delay, hinder, or defraud the IRS under § 727(a)(2)(A) because his intent can be inferred from "badges of fraud" under the often-applied test set forth in *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983). *See* Dkt. No. 75 at 24-27.

I.   Under the *Sentinel* "Natural Consequences" Standard, Winick's Knowledge of the IRS's Lien on His Interest in SDSDR111 LLC Establishes His Intent.

To begin, if the Court follows the *Sentinel* standard, Winick's knowledge of the IRS's

senior lien on his interest in SDSDR111 LLC at the time he transferred that interest to Berley itself necessitates the conclusion that he acted with "intent to delay, hinder, or defraud" the IRS under § 727(a)(2)(A). Under that standard, "every person is presumed to intend the natural consequences of his acts." *In re Sentinel*, 828 F.3d at 667 (quotation marks omitted). It is obvious that that the natural consequence of transferring an asset to a junior lienholder just prior to filing bankruptcy would be to delay, hinder or defraud senior lienholders from collecting on their debts. That is particularly so in Winick's case, where he knew he owed the IRS millions and that he was going to file for bankruptcy while claiming to have no remaining assets of substantial value. Under *Sentinel*, Winick is presumed to intend that natural consequence.

The facts of this case are strikingly similar to those of *Sentinel*. In that case, "Sentinel pledged [] funds that were supposed to remain segregated for its . . . clients," as collateral for bank loans. *Id.* at 667. Although Sentinel claimed "a desire to stay in business" rather than an intent to defraud, the Seventh Circuit concluded that even though the "primary purpose may not have been to render the funds permanently unavailable to [the] clients," Sentinel "should have seen this result as a natural consequence of its actions" and therefore acted with an intent to delay, hinder, or defraud. *Id.* Similarly here, even if Winick was driven by a motive other than hindering the IRS, the natural consequence of transferring his interest in SDSDR111 LLC—which at the time was his only valuable property—to a creditor with an interest junior to the IRS's lien was to frustrate the IRS's collection efforts.

The *Sentinel* test reflects the clear majority view of the courts. For over a century, it has been applied in bankruptcy cases across the country. *See, e.g.*, *In re Sagor*, 121 F. 658 (2d Cir. 1903) ("Parties are presumed to intend the ordinary and natural consequences of their acts."); *Navassa Guano Co. v. Cockfield*, 253 F. 883, 886 (4th Cir. 1918) ("Nor can the transfer in question

2

be defended on the ground of difference between conscious and constructive fraud, for it is familiar doctrine that every man must be presumed to intend the natural consequences of his acts."); *Lovett v. Faircloth*, 10 F.2d 301, 303 (5th Cir. 1925) ("It is a fair inference that the loans were paid to the preferred banks at Quitman through banks in other cities, for the purpose of keeping such preferred banks as far removed from the transaction as possible. One is presumed to intend the natural consequences of his acts."); *Yates v. Boteler*, 163 F.2d 953, 957 (9th Cir. 1947) ("[A] man is presumed to intend the natural consequences of his acts."); *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1305 (3d Cir. 1986) ("[A] party is deemed to have intended the natural consequences of his acts.").[1] The Supreme Court has recognized that it applied at common law. *See Pico v. United States*, 228 U.S. 225, 231 (1913) ("[A]t common law, men are presumed to intend the natural consequences of their act."). And more recent Supreme Court cases have recognized its continuing validity. *See Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 488 (1997) ("[P]eople usually intend the natural consequences of their actions."); *see also Washington v. Davis*, 426 U.S. 229, 253 (1978) (Stevens, J., concurring) ("[N]ormally the actor is presumed to have intended the natural consequences of his deeds."). This Court should accordingly adopt the *Sentinel* test and find in favor of the Government on its § 727(a)(2)(A) claim.

II.    Under the Minority "Natural Consequences" Standard, Winick's Knowledge of the IRS's Lien on His Interest in SDSDR111 LLC Is Still Dispositive of His Intent.

Even if this Court declines to follow the majority "natural consequences" standard, it must still conclude that Winick's knowledge that the IRS held a senior lien on his interest in SDSDR111

---

[1] As the *Tabor* court recognized, the presumption that a party intends the natural consequences of his actions differs from the "concept of foreseeability." *Id.* at 1305. The presumption is an *evidentiary* rule regarding how best to infer a parties' mental state from their actions. By contrast, the tort concept of foreseeability holds parties liable for their actions *regardless* of their subjective mental state. *Cf. In re Trib. Co. Fraudulent Conv. Litig.*, No. 11-MD-2296 (RJS), 2017 WL 82391, at *12 n.15 (S.D.N.Y. Jan. 6, 2017) (conflating the two concepts); *In re Lehman Bros. Holdings Inc.*, 541 B.R. 551, 575 n.6 (S.D.N.Y. 2015) (same).

3

LLC at the time he transferred it to Berley is dispositive of his intent under § 727(a)(2)(A). The decisions that do not follow *Sentinel*, like *Lyondell*, recognize that "proof of the natural consequences of one['s] act may serve as circumstantial evidence that one appreciated those consequences." 554 B.R. at 651 n.17. And under this alternative standard, a party need only "mental[ly] apprehen[d]" the consequences of his actions for a court to find that he intended them. *Id.* at 651; *see also In re Condon*, 198 F. 947, 959 (S.D.N.Y. 1912) (to prove "actual intent," a party must show that the other party had "mental apprehension" of the "consequences" of his actions before intent "attaches to his conduct").[2] That standard is easily met here as well.

The circumstantial evidence here clearly demonstrates that Winick mentally apprehended the results of his conduct. As explained in the Government's post-trial brief and summarized below, numerous "badges of fraud" provide overwhelming circumstantial evidence of Winick's mental apprehension that his actions would delay, hinder, or defraud the IRS. Dkt. No. 75 at 24-27; *see also infra* at 5. The "natural consequence" of Winick's transfer of his interest in SDSDR111 LLC provides even further circumstantial evidence. Winick transferred his last piece of valuable property to a junior lienholder shortly before filing for a bankruptcy in which he claimed that he had *no* remaining assets of value, apart from some residual commissions worth a few hundred thousand dollars. JX 1 at 20. At the time, he knew both that the IRS was a senior lienholder entitled to the transferred property and that he owed the IRS millions of dollars that his bankruptcy estate could not come close to satisfying. JX 2. These facts support the unavoidable inference that Winick "mental[ly] apprehend[ed]" that his actions would delay, hinder, or defraud the IRS, even without a presumption that his actions would do so. That is enough to establish his

---

[2] Indeed, although the *Lyondell* court did not adopt the *Sentinel* standard in full, it recognized that the test it adopted was consistent with *Sentinel*'s emphasis on *mental apprehension* rather than *motive* in assessing intent under § 727(a)(2)(A). *See id.* ("*Sentinel* principally addressed, therefore, the distinction between one's motive and one's appreciation of the consequences of one's acts.").

4

intent under the *Lyondell* standard. *See* 554 B.R. at 651 (describing the relevant inquiry as whether a party "contemplate[d]" an effect or was "substantially certain" that it would result).

III.    The "Badges of Fraud" Test Establishes Winick's Intent.

Finally, irrespective of any judicial presumptions regarding Winick's intent, the Court should find that Winick acted with intent to defraud the IRS using the traditional "badges of fraud." *See In re Kaiser*, 722 F.2d at 1582. As set forth in the Government's post-trial brief, Winick's transfer of his interest in SDSDR111 LLC to Berley was marked by numerous badges of fraud, including: (1) that Winick abruptly decided to stop paying the IRS and instead to pay off his loans to Berley completely, despite not having paid Berley in years, soon before he filed for bankruptcy, Dkt. No. 75 at 24-26; (2) that Berley and Winick are close friends, *id.* at 26; (3) that Winick transferred his interest in SDSDR111 LLC for inadequate consideration, *id.* at 26-27; (4) that Winick transferred his interest in SDSDR111 LLC as part of a pattern of divestments, *id.* at 27; and (5) that Winick was left without any valuable assets after the transfer, *id.* These "badges of fraud" establish Winick's intent to defraud the IRS.

## CONCLUSION

For the reasons stated herein and in the Government's other briefs, the Court should enter judgment in the Government's favor on Counts I, II, and IV of its adversary complaint.

Dated: New York, New York
       May 24, 2024

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  */s/ Zachary Bannon*
    ZACHARY BANNON
    JEAN-DAVID BARNEA
    Assistant United States Attorneys
    86 Chambers Street, 3rd Floor
    New York, New York 10007