UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                              :
                                                    :      Chapter 7
    JEFFREY WINICK,                          :
                                                    :      Case No. 20-11976 (PB)
                              Debtor.  :
------------------------------------------------------------x
UNITED STATES OF AMERICA,                           :
                                                    :      Adv. Proc. No. 21-01138 (PB)
                              Plaintiff, :
                                                    :
    v.                                          :
                                                    :
JEFFREY WINICK,                                     :
                                                    :
                              Defendant. :
------------------------------------------------------------x

## DEFENDANT'S SUPPLEMENTAL BRIEF

Defendant and debtor Jeffrey Winick ("Debtor") submits this brief in response to the Court's Order directing supplemental briefing. Dkt. No. 79.

In its Order, the Court asks whether, if the Court were to find that Debtor was aware of the IRS's senior lien when he transferred his interests in SDSDR111 LLC ("SDS") to David Berley ("Berley"), that finding would warrant the conclusion that Debtor intended to hinder or delay the IRS's collection efforts. *Id.* The answer is no.

There is insufficient evidence to support a finding Debtor was aware of the IRS's lien, much less its seniority, in July 2020. Debtor's testimony that he had no recollection of the lien at the time is unrebutted. *See* Dkt. No. 77 at 10-11. There is also no evidence of any IRS collection efforts or any discussion with Debtor or Berley of the IRS's lien on the SDS interests. As a result, plaintiff United States of America (the "Government") can only argue that it is "implausible" Debtor did not recall the lien. Dkt. No. 78 at 11. But that is not enough to meet the Government's

burden of proof, particularly given that evidentiary doubts must be resolved in Debtor's favor. *See* Dkt. No. 77 at 2 (citing cases).

Even assuming the Court finds Debtor was aware of the IRS's lien, that fact would not be determinative of whether he violated 11 U.S.C. § 727(a)(2)(A) for several reasons.

First, section 727(a)(2)(A), by its terms, requires *intent* to defraud, delay, or hinder creditors. Such intent, as explained in *Lyondell*, means Debtor must have had (1) "mental apprehension" of the consequences of his actions or (2) a desire to hinder or delay the IRS's collection efforts or a belief that those consequences were substantially certain to result from his actions. *In re Lyondell Chem. Co.*, 554 B.R. 635, 650-51 (S.D.N.Y. 2016). Mere awareness of the IRS's lien would not automatically establish Debtor appreciated, much less intended, the consequences of turning over his interests to Berley on the IRS, particularly where the IRS had never given Debtor any indication that it was asserting priority over those interests.[1] *See* Dkt. No. 77 at 11.

Because it is not a dispositive fact, Debtor's awareness of the IRS's lien would have to be evaluated alongside the other evidence in the case. *Lyondell*, 554 B.R. at 651 n.17 (reasoning that while "proof of the natural consequences of one['s] acts may serve as circumstantial evidence that one appreciated those consequences . . . [n]onetheless, the fact finder is required to find, based on all direct and circumstantial evidence, that the debtor did form an actual intent to defraud creditors"). That evidence shows the absence of badges of fraud and a lack of fraudulent intent. *See* Dkt. No. 77 at 10-15. Thus, even if Debtor were aware of the IRS's lien, the Government has

---

[1] The evidence adduced at trial does not show Debtor intentionally preferred Berley to the IRS, but even if that was the outcome of the transfer, merely preferring one creditor over another does not prove intentional fraud. *E.g.*, *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005); *In re Marra*, 308 B.R. 628, 630 (D. Conn. 2004).

2

not bridged the evidentiary gap from awareness to intentionality, as is needed to establish liability under section 727(a)(2)(A).

The natural consequences doctrine—which was developed in the context of section 548 claims and has not been applied to section 727(a)(2)(A)—has no bearing on the Court's inquiry. Courts in this District have expressly declined to follow that doctrine even for section 548 cases because it impermissibly substitutes the more stringent actual intent standard for a lower, negligence standard. *See*, *e.g.*, *In re Tribune Co. Fraudulent Conveyance Litig.*, No. 12-cv-2652 (RJS), 2017 WL 82391, at *12 n.15 (S.D.N.Y. Jan. 6, 2017) (declining to follow out-of-circuit opinions that "impermissibly equate the actual intent standard with a foreseeability or negligence standard"), *aff'd in part*, 10 F.4th 147, 162 (2d Cir. 2021) (reasoning that the actual intent standard cannot be stretched to include "the merely possible or conceivable as opposed to existing in fact and reality"); *Lyondell*, 554 B.R. at 650 ("An actual intent to defraud, hinder, or delay may not be presumed."); *In re Lehman Bros. Holdings, Inc.*, 541 B.R. 551, 576 n.6 (S.D.N.Y. 2015) (rejecting the argument that Lehman "knew or should have known that the natural and obvious consequences" of signing certain agreements and transferring collateral "would be to hinder or delay Lehman's other creditors" as "misunderstand[ing]" the actual intent standard); *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 936 (S.D.N.Y. 1995) ("There is no indication that the courts of New York or other relevant jurisdictions have imported the concept of foreseeability into the analysis of actual intent to defraud. Such a standard, though appropriate where culpability is based on negligent conduct, is incompatible with the concept of actual fraud.").

The negligence standard embraced by the natural consequences doctrine is even more problematic in the section 727(a)(2)(A) context because exceptions to discharge must be narrowly

3

construed. *In re Hyman*, 502 F.3d 61, 66 (2d Cir. 2007); *see also In re Glaser*, 49 B.R. 1015, 1019 (S.D.N.Y. 1985) ("In considering what constitutes actual fraud the court must be mindful of the axiom that the statute must be construed liberally in favors of debtors and strictly against the objector."). Actual intent cannot be established by proving constructive intent, *Glaser*, 48 B.R. at 1019, much less presumed. Indeed, applying a doctrine that creates a presumption *against* a debtor violates the general presumption *favoring* the debtor in discharge contests. *In re Green*, No. 06-9086 (CGM), 2007 WL 1428547, at *3 (Bankr. S.D.N.Y. May 11, 2007). Thus, it comes as no surprise that Debtor's undersigned counsel have been unable to locate any decision that has applied the doctrine to a section 727(a)(2)(A) claim.

Further, the unique context in which the Seventh Circuit applied the natural consequences doctrine in *Sentinel* illustrates why that doctrine cannot be imported to this case. *See In re Sentinel Mgmt. Grp., Inc.*, 728 F.3d 660 (7th Cir. 2013). There, the court held the debtor's pledging funds that were supposed to remain segregated for clients' benefit was intentionally fraudulent—even if the debtor had a non-fraudulent motivation for its actions—because the debtor knew that the pledge violated the Commodities Exchange Act and lied to both its clients and the Commodity Futures Trading Commission in representing that the client funds were, in fact, segregated. *Id.* at 667-68. Here, by contrast, there is no evidence Debtor knew he was doing anything illegal when he transferred the SDS interests—at Berley's behest—and the IRS had known for years that Berley had a competing lien because Debtor disclosed that fact time and again, both before and after the transfer. *See* Dkt. No. 77 at 10-13. If anything, applying the natural consequences doctrine in this case yields the absurd conclusion that Debtor intentionally incurred $600,000 in additional, nondischargeable transfer tax debt to prevent the IRS from reaching assets worth only $240,000,

4

and which would have reduced his existing debt. *See id.* at 13-15. Nothing in the record substantiates such a conclusion.

For these reasons, and the reasons stated in Debtor's post-trial brief, the Court should enter judgment in Debtor's favor on the Government's section 727(a)(2)(A) claim.

Dated: May 24, 2024                                **ARENTFOX SCHIFF LLP**

*/s/ Jin Yan*
Jin Yan
1717 K St. NW
Washington, DC 20006
T: (202) 778-6442
E: jin.yan@afslaw.com

- and -

Ryan Foley
1301 Avenue of the Americas
42nd Floor
New York, NY 10019
T: (212) 484-3997
E: ryan.foley@afslaw.com

*Counsel for Defendant Jeffrey Winick*

5